STATE OF OREGON,
*Respondent,*
*v.*
LARRY DALE MIDDLETON,
*Appellant.*

(No. 78-7979, CA 14718)

611 P2d 698

A. Kenneth Gough, Eugene, argued the cause for appellant. With him on the brief was Thomsen, Gough & Gough, Eugene.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

## ROBERTS, J.

This case is the result of a barroom confrontation which proved fatal to one of the two participants. The defendant and the victim met in a bar near Eugene. Shortly after their meeting, the victim pushed, shoved or threw the defendant to the floor or against a booth. According to the defendant, this attack was unprovoked. However, other witnesses testified that the defendant had been "bugging" and swearing at the victim, who had asked the defendant to leave him alone.

After the defendant arose from the floor, or from the booth, he and the victim struggled. According to the defendant, the victim was the aggressor, and the defendant only pulled out his knife to defend himself or to dissuade his attacker. Other witnesses testified that the defendant arose from the floor with a knife in his hand and that he advanced on the victim with the knife held out in front of him. After the defendant and the victim struggled together, the victim fell to the floor, dead from a fatal stab wound to the heart.

As a result of this fatal confrontation, the defendant was indicted and tried for murder. ORS 163.115. A jury found the defendant guilty of first degree manslaughter. ORS 163.118. We affirm.

Defendant's first assignment of error centers on an incident in which the trial judge held defendant in contempt in front of the jury. The defendant argues that the trial judge erred in denying his subsequent motion for mistrial.

Defendant testified at the trial that after the killing, he fled from the bar and from the state. On direct examination, he testified that he had gone to New York, or to New Jersey, and that he had spent four or five days traveling to the east coast.

On cross-examination, defendant explained that he had hitchhiked and walked on his way east. The district attorney then asked whether the defendant had

contacted anyone he knew on this trip. The defense attorney objected, contending that the question was irrelevant. The trial judge overruled the objection. Defendant then refused to answer. The trial judge directed the defendant to answer. Again, the defendant refused.

The trial judge warned defendant that, if he did not answer, he would be held in contempt. However, at defense counsel's request, the judge allowed defendant to explain his reluctance. Defendant said that the people that he had stayed with did not "have anything to do with this case," and that he feared that, if he revealed their names, they would be "harassed" by the police.

The judge told the defendant that, despite his explanation, he was required to answer the state's question.

Again, the defendant refused. The court concluded,

"All right. Well, I'm going to find you in direct contempt of court. I've ordered you to answer that question."

The court then recessed for the evening. The next morning, the defendant first apologized to the court, and then moved for a mistrial.[1] The trial judge denied the motion.

Defendant does not argue that, in refusing to answer, he was not in direct contempt of court. *See* ORS 33.010(1)(j). Rather, defendant contends that the court erred in holding him in contempt *in front of the jury.*

Defendant emphasizes that, in a jury trial, the judge and the jury perform different functions with

---

[1] The state argues that the defendant's motion for a mistrial was not timely. We disagree. The court recessed immediately after holding the defendant in contempt. The court noted that, during the recess, the defendant could "discuss with your attorney how you plan to proceed on this basis." The next morning, when the defendant moved for a mistrial, no further proceedings had been held before the jury. We find that the defendant's motion was timely.

the jury being the trier of fact. ORS 136.030. Defendant suggests that the trial court's holding him in contempt was akin to a comment on the evidence, which could have prejudiced the jury, and quotes our observation that,

"It is part of human nature to seek support in weighty decisions such as the guilt or innocence of an accused. * * *" *State v. Flores,* 31 Or App 187, 190, 570 P2d 94 (1977). *See also State v. Medina,* 39 Or App 467, 592 P2d 1042 (1979).

A motion for mistrial is addressed to the discretion of the trial court and only a manifest abuse of that discretion will justify reversal. *State v. Atkinson,* 28 Or App 909, 562 P2d 978 (1977). We find no such abuse of discretion in this case.

While it might be the better practice to hold the defendant in contempt outside of the presence of the jury, where that is feasible, in this case we find no error in the trial court's actions which would require the granting of a mistrial. *See State v. McClain,* 171 Conn 293, 370 A2d 928 (1976); *Preston v. Commonwealth,* 406 SW2d 398, 29 ALR3d 1387 (Ky 1966); *State v. Bleefield,* 115 NJL 76, 178 A 561 (1935).[2]

We note that, while defendant's repeated refusal to answer the state's question, and the trial court's warning, foreshadowed defendant's being held in contempt, defense counsel did not ask to take the matter up outside of the presence of the jury.

When defendant was held in contempt, the jury already had heard the defendant's persistent refusal to answer. The trial judge allowed the defendant to explain his reluctance to answer. The trial judge did not

___

[2] Defendant relies on *People v. Cole,* 113 Cal App 2d 253, 248 P2d 141 (1952), which is the only case cited to us, and the only case which we have found, stating that it is reversible error to hold a defendant in contempt in the presence of a jury. *Cole* is distinguishable on its facts. The appellate court found that the defendant had not been contumacious, and that the trial court's comments "not only seriously discredited the defendant in the jury's eyes but threw his judicial weight onto the side of the prosecution in the presence of the jury by at least implicitly vouching for the credibility of the prosecution's witness." 248 P2d at 146.

[385]

berate the defendant; she simply held him in contempt. In addition, the trial judge gave a curative instruction to the jury stressing that the contempt "matter is not to be and is not evidence upon which you may base your decision in this case."[3]

The trial court did not abuse its discretion in denying the motion for mistrial.[4]

Defendant next contends that the trial court erred in allowing the introduction of certain exhibits, including autopsy photographs of the victim, and a knife similar to the one used to kill the victim.

Defendant argues that the prejudice resulting from those exhibits far outweighed their relevance. *See State v. Freeman,* 232 Or 267, 273-74, 374 P2d 453 (1962). We disagree.

The first photograph, the admission of which is assigned as error, is a picture of the victim as he appeared after the knifing. The wound is not visible. The trial court did not abuse its discretion in admitting this photograph. *State v. Freeman, supra.*

---

[3] The court instructed the jury as follows:

"Now, ladies and gentlemen, before we begin the proceedings this morning I want to give you an instruction. Yesterday at the close of the day the Court did find the defendant, who was on the witness stand, in direct contempt of court. That matter is not to be and is not evidence upon which you may base your decision in this case. That is a matter that the Court will deal with and is a matter of law, and so we're going to proceed now with the taking of the testimony and you do not have to concern yourselves with that problem or with the resolution of it, but you will decide this case upon the facts that are before you that relate to the charge."

[4] On appeal, the defendant complains that the state, in its closing argument, referred to the defendant's refusal to testify. At trial, the defendant did not object to the state's argument. In any event, the argument urged the jury to consider the defendant's refusal to answer, and not his being held in contempt. The defendant's demeanor as a witness, including his reluctance to answer questions, is relevant. The defendant may not insulate his behavior as a witness from the jury's consideration by behaving contumaciously. The defendant fails to appreciate the distinction between his persistent refusal to answer, and the court's response to that refusal.

[386]

The remaining photographs are four pictures taken during the victim's autopsy. They progress from a photograph of the external wound to pictures of the victim's heart. Defendant maintains that these photographs were inadmissible because he had conceded that the victim died from a knife wound. *See State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972).

However, in this case, the photographs have relevance which extend beyond the points conceded by defendant. The photographs reveal that, while there is a single external knife wound, there are two distinct slashes to the heart. the pathologist testified that the wounds indicated that the knife had been repositioned and redirected within the victim's body. One photograph illustrates the depth of one of the heart wounds. Another photograph shows the knife cut through the cartilaginous portion of a rib.

Defendant was charged with murder. He claimed that the stabbing was an accident or that he acted in self-defense. The photographs were relevant to show the force of the knife thrusts, and the redirection of the knife. *See State v. Armstrong,* 38 Or App 219, 589 P2d 1174 (1979); *State v. Oveross,* 18 Or App 300, 525 P2d 176 (1974).

The remaining exhibit, the admission of which is challenged by the defendant, is a two-edged knife similar to the one used to kill the victim. Defendant testified that he threw the actual weapon away.

Defendant testified that the knife offered by the state was the same style, and same type as his knife. The two knives were almost identical, except that the state's knife was new while defendant's knife had been used. The pathologist said that the victim's wounds were consistent with the knife offered by the state.

The trial judge did not abuse her discretion in allowing the introduction of the illustrative knife. *Cf. State v. Harrison,* 253 Or 489, 455 P2d 613 (1969).

Defendant's final assignment of error centers on the sentencing proceedings.

During those proceedings, the state referred to a letter, sent by a juror to the district attorney, which reflected on the jury's deliberative process. Defendant argues that the trial court erred in "considering the reasoning process of the jury" during the sentencing proceeding.

The flaw in this argument is that the trial judge did not rely on the juror's letter. The judge emphasized that she was only going to consider "the verdict that was returned."[5]

Affirmed.

---

[5] Defendant also contends that the trial judge erred during the sentencing proceeding because she took the defendant's contempt into consideration in setting defendant's sentence. Defendant was sentenced to a 20-year term of imprisonment. The maximum sentence for the contempt was a $100 fine. ORS 33.020(1); *State ex rel Spencer v. Howe,* 281 Or 599, 576 P2d 4 (1979).

Defendant is incorrect. The court's detailed reasons for the sentence imposed contain only an off-hand reference to the defendant's behavior as a witness. In addition, the comment is directed to the defendant's demeanor on the witness stand, and not to the punishment for defendant's contempt. *(See* n 4).