Argued October 27, affirmed November 24, petition for
rehearing denied December 20, 1972, petition for
review denied February 13, 1973

STATE OF OREGON, *Respondent, v.* STEPHEN
GREGORY O'BERRY (No. 37888), *Appellant.*

503 P2d 505

*Gary D. Babcock,* Public Defender, Salem, argued
the cause and filed the brief for appellant.

*Stephen H. Miller,* Deputy District Attorney, Roseburg, argued the cause for respondent. On the brief was Doyle L. Schiffman, District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

## LANGTRY, J.

■ Defendant appeals from conviction of murder. ORS 163.115. His only assignment of error is that the court should have submitted to the jury the lesser included crime of manslaughter pursuant to a requested, written instruction which he had submitted to the court. The state has objected to our consideration of the point thus raised, because the defendant took no exception to the refusal to give the instruction. The submission of a written instruction saves the record and we will consider the assignment. *Crow v. Junior Bootshops,* 241 Or 135, 404 P2d 789 (1965).

The indictment charged the defendant with the murder of a young lady on February 21, 1972 at a time when he was attempting to commit the crime of rape in the first degree upon her. She had sustained ten stab wounds. The physical evidence overwhelmingly established that defendant had assaulted and slain the victim, that her clothes were forcibly torn and some removed, and that defendant had made some sexual attempt upon her, although she had not been sexually penetrated. The defendant's properly admitted oral admissions were that he stabbed the victim to death as she resisted advances which he thought she had encouraged, and as she said "* * * 'Buster, you are not going to rape me.' * * *." Defendant pleaded innocence by reason of mental disturbance and produced

evidence thereof. This evidence showed that he previously had been the aggressor in attempted rapes and had become violent when his advances were resisted. He had been incarcerated and treated in California institutions for mental disturbance involving sexual violence and aberration.

ORS 163.115 provides:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"* * * * *

"(c) It is committed by a person * * * who commits or attempts to commit * * * rape in the first degree * * * and in the course of and in furtherance of the crime he is committing or attempting to commit * * * he * * * causes the death of a person * * *.

"* * * * * *."

ORS 163.125 provides:

"(1) Criminal homicide constitutes manslaughter when:

"* * * * *

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, *which disturbance is not the result of his own intentional, knowing,* reckless or criminally negligent *act, and for which disturbance there is a reasonable explanation* * * *

"* * * * *

"(2) * * * *[T]*he reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be.*

"* * * * *." (Emphasis supplied.)

The defendant's contention is that the language quoted above in ORS 163.125 intends that, where he

has produced evidence of emotional disturbance such as he did produce, it is evidence that should be considered by the jury in determining whether there should be a conviction of manslaughter rather than murder.

The statutes defining these crimes of murder and manslaughter became effective on January 1, 1972, and they are a part of the criminal code revision enacted by the 1971 Oregon Legislature. The Criminal Law Revision Commission in its report and explanation to the legislature preceding enactment of the new code stated with reference to paragraph (1) (b) of ORS 163.125 (manslaughter) above that it

"\* \* \* treats on a parity with provocation cases in the classic sense, situations where the provocative circumstance is something other than an injury inflicted by the deceased on the actor but nonetheless is an event calculated to arouse extreme mental or emotional disturbance. The draft section also introduces a larger element of subjectivity, though it is only the actor's 'situation' and 'the circumstances as he believes them to be,' *not the defendant's scheme of moral values,* that are thus to be considered. The ultimate test, however, is objective; *there must be 'reasonable' explanation or excuse for the actor's disturbance \* \* \*."* (Emphasis supplied.) Proposed Oregon Criminal Code Final Draft and Report 88, 89, Art 10, § 89C (July 1970).

The report also quotes from the comment in the Model Penal Code from which the new formula was taken:

" '\* \* \* The question in the end will be whether the actor's loss of self-control can be understood in terms that arouse sympathy enough to call for mitigation in the sentence. That seems to us the issue to be faced.' (Comment, Tent. Draft No. 9 at 48)."

■ ■ Our interpretation of the statutes from the plain wording thereof brings us to a conclusion which coincides with the explanation given by the Criminal Law Revision Commission. ORS 163.125 (1)(b) allows mitigation to manslaughter of that which otherwise would be murder where some unexpected and provocative event triggers the actor into committing the homicide. It is not intended to cover a situation like that here, where the only reasonable interpretation of the evidence is that the actor intentionally starts to commit rape and upon meeting resistance kills the victim. The loss of the actor's control, if that is what happened, was not something which occurred during the attempt to commit the rape but rather he lost the kind of control the law contemplates when he undertook what any reasonable person would know was an attempt to rape. Thus, if he is to be allowed mitigation on account of his emotional disturbance, it must come by way of proof that he was mentally disturbed in such a way that he was not responsible for his criminal actions. He was afforded that opportunity and the jury was properly instructed therein. Our conclusion is bolstered by the precedents existing under the previous statutory law in Oregon. In several cases the Oregon Supreme Court and this court said that in a felony-murder case an instruction on the lesser degrees of homicide is improper. *State v. Smith,* 1 Or App 153, 163, 458 P2d 687 (1969), Sup Ct *review denied* (1970); *State v. Jensen,* 209 Or 239, 289 P2d 687, 296 P2d 618, *appeal dismissed* 352 US 948 (1956), *reh denied* 352 US 990 (1957); *State v. Wilson,* 182 Or 681, 685, 189 P2d 403 (1948). In *Jensen* the court said:

"* * * The only criminal intent necessary to be alleged or proved was the intent to commit the crime of robbery [here, rape]. Wharton on Homi-

cide (3d ed) 175 § 119. If the defendant did not have the mental capacity to form such an intent then he was not guilty of any crime whatever * * *." 209 Or at 264.①

① State v. Jensen was discussed by the Criminal Law Revision Commission in connection with the part of the new criminal code which deals with "Responsibility," specifically, ORS 161.300 which provides:

"Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether he did or did not have the intent which is an element of the crime."

In explanation of this language, *inter alia,* the commission said:

"* * * In *State v. Jensen,* 209 Or 239 (1957), the court held that the doctrine [of partial responsibility] could not be applied to reduce first degree murder arising from the felony murder doctrine to second degree murder or manslaughter. But felony murder is more in the nature of a 'strict liability' crime and not a crime of premeditation * * *.

"* * * * *

"The defense of partial responsibility is not too dissimilar to another defense familiar in Oregon and elsewhere—the rule that a homicide will be reduced from murder to manslaughter if defendant killed in a 'heat of passion' arising out of a 'sufficient' provocation. See [former] ORS 163.040. Adoption of the partial responsibility doctrine contained in the proposed section seems, then, to be a natural extension of legal principles already well established in Oregon." Proposed Oregon Criminal Code Final Draft and Report 37, 38, Art 5, § 37C (July 1970).

A perusal of the legislative minutes relating committee discussion of what became ORS 161.300 reveals the following:

"Senator Hoyt asked if drunkenness or intense rage would be called a mental disease or defect [under the section which, unchanged, became ORS 161.300].

"Professor Platt said * * * there is a definite distinction between the two. * * * The provision in section 37 is not temporary insanity, it is not insanity at all; it is a mental disease or defect which interferes with the ability to form a particular intent. This is not a lack of responsibility which will excuse crime of any sort; it will excuse only crime charged which requires the state show a specific mental element.

"Mr. Paillette advised the 'extraordinary rage' type of thing mentioned by Senator Hoyt is dealt with in the Homicide

We find nothing in the new statutes which indicates there was any intention to change the law in the manner urged by defendant. The trial court was correct in refusing to give the requested instruction.

Affirmed.<sup>②</sup>

---

Article." Senate Criminal Law and Procedure Committee Minutes, February 10, 1971, p 3.

When the committee got to a discussion of the homicide article, in particular what became ORS 161.125, quoted in text:

"Senator Burns commented that he was * * * disturbed * * * by the subjective test in the ALI standards [which are adopted in ORS 161.125] * * *.

"Professor Platt replied * * * The balancing factor * * * is that the test is not all that subjective in that the reasonableness of the explanation given by a defendant 'shall be determined from the standpoint of a person in the actor's situation under the circumstances as he believes them to be.' This requirement, he believed, inserts some objectivity into a highly subjective standard. There are some real problems now with the old provocation formula, he said, that this new definition is intended to avoid." Senate Criminal Law & Procedure Committee Minutes, February 16, 1971, p 8.

These comments, both from the Criminal Law Revision Commission and legislative committee, are the most pertinent to the issue at bar that we find. Nothing we have found says anything about the possibility of a jury's reducing a felony murder to manslaughter under the new statutes. Thus, we discern no basis to believe that the legislature intended to change the rule from *Jensen* which we quote in text.

② The prosecutor's answering brief contains what he designates as "Plaintiff's Assignment of Error" in which he asserts that the court was in error in instructing the jury that a unanimous verdict was necessary. The state did not take an appeal in this case; indeed, we have not been shown how it could do so. Therefore, we will not consider this asserted assignment of error. However, we do refer the prosecutor to the following paragraph in explanation of present ORS 163.115:

"It should be noted, also, that it is not the Commission's intent to change the present requirement of a unanimous verdict in first degree murder cases, notwithstanding the fact that § 88 of the Act abrogates the technical distinctions be-

tween first and second degree murder. A unanimous verdict of the jury would be required in any prosecution under § 88. [ORS 163.115.] See § 11, Art. I, Oregon Constitution; ORS 136.610 (2)." Proposed Oregon Criminal Code Final Draft and Report 84, 88, Art 10, § 88C (July 1970).