SCHWAB, C. J.
Defendant appeals from his conviction by a jury of murder, ORS 163.115, and contends that the court erred (1) in admitting evidence that he had seen the movie "Helter Skelter” the night before the murder, and (2) in instructing the jury as to the felony-murder rule.
On the evening of April 2, 1976, defendant was drinking various intoxicating liquors in the company of several friends at the house of one George Smith and later in the evening watched the movie, "Helter Skelter.” After an altercation with several of his friends, defendant left the Smith residence "really fast” in his pickup truck which was equipped with a tape player in the glove compartment. At about 1:30 in the morning of April 3, defendant’s pickup truck partially rear-ended a parked car, and the driver of the pickup was observed reaching into the passenger side of the pickup and then running away. When a policeman arrived at the scene, the contents of the glove compartment of the pickup — papers and loose wires — were askew. There was no tape player in the glove compartment.
Sometime in the early morning hours of April 3, Charles Taylor, whose house is located about a half-mile from the mobile home of the decedent, was awakened by a pounding on his back door. The visitor at the back door gave his name as Darrell McLean and offered Taylor $100 to take him to a location on a nearby highway or to a nearby town. The visitor was clutching a tape player, smelled of alcohol, and was dressed in blue jeans and a T-shirt. Taylor left his visitor for a time, but when he returned to the door, his visitor was gone. Taylor then called the police.
At about 2:00 a.m. the same morning, Darel Gifft, whose house is next door to the mobile home of the decedent, noticed a man enter the mobile home. The man was not wearing any coat or wrap. Gifft testified that the man remained in the mobile home for ten to *[594] fifteen minutes and then left, wearing a knee-length jacket. Gifft then called the decedent’s son who rushed to the mobile home and found the decedent lying unconscious on the bathroom floor. A tape player and a watch were found in the mobile home. The evidence showed that the decedent, an 87-year-old woman, had been beaten severely about the face, possibly with a blunt object, and that she later died of complications from the beating.
Shortly thereafter the same morning, the defendant, while hitchhiking, was picked up by a police officer. Defendant’s hands and clothes were bloody, and he was wearing a T-shirt, blue jeans and a knee-length jacket which the decedent’s son later identified as belonging to the decedent. After being arrested and incarcerated, defendant told two different cellmates that he had broken into a lady’s house and beaten the woman. Several of the details related by defendant to his cellmates matched the physical condition of the mobile home and surrounding area.
Defendant contends first that the court erred in admitting evidence that he had viewed "Helter Skelter” the night before the crime. Only two references were made to "Helter Skelter” during the trial. The first occurred during the direct examination of one of defendant’s friends with whom defendant had spent the evening of April 2:
"Q. [by prosecutor]. Okay, and was there — what did you do then?
"A. Well, we started watching TV for a little while because that movie, 'Helter Skelter,’ was on.
"MR. NEUFELD [defense attorney]: I’d object to that, Your Honor.
"THE COURT: Objection overruled.
"BY MR. BURROWS [prosecutor]:
"Q. Was Mr. McCready watching TV with you?
"A. He sat there for a little bit and caught glances of it, I’m not sure.
"Q. Is there some conversation you recall having with Mr. McCready?
*[595] "A. Yeah, some parts he said it was real gross, he couldn’t see how people did that to other people.
"Q. What were they talking about when Mr. McCready made that statement?
"A. The one woman was talking to the other inmate about what they had done at the Sharon Tate residence.
"Q. What was that?
"A. That they had stabbed her.
"MR. NEUFELD: I’d object to that, Your Honor. Any line of questioning referring to this.
"MR. BURROWS: We understand Mr. Neufeld’s objections, Your Honor.
"THE COURT: Objection sustained.”
The other reference occurred during the direct examination of a police officer who questioned defendant on the morning of the murder:
"Q. [by prosecutor]. Go ahead and tell us, Mr. Russell, what it was that Mr. McCready said.
"A. Yes. During this time Mr. McCready indicated to me that, he says, 'I broke into Grandma’s trailer. I broke out a front window. I have committed a crime of burglary. I found Grandma in the bedroom all bloody, so I picked her up in my arms and I held her. I then began to cry.’ And he also indicated, 'I’ve lost my watch some place. I talked to Grandma, but she said she was not my grandma. I went to Grandma’s to see if I could borrow ten dollars to get my car fixed. I watched the first half of "Helter Skelter” and it was sure bloody.’ And after he made these comments, I asked no questions. I made mental notes and later listed it.”
In State v. Flett, 234 Or 124, 127, 380 P2d 634 (1963), the Supreme Court held that when highly prejudicial evidence is offered, the probative value of the evidence, i.e., its tendency to prove a factual issue in dispute, must be weighed against "the tendency of the offered evidence to produce passion and prejudice out of proportion to its probative value.” See also State v. Kristich, 226 Or 240, 359 P2d 1106 (1961). Applying this standard, the question as to the admissibility of the "Helter Skelter” evidence is a close one, but we have no need to resolve it here where the evidence *[596] against the defendant is overwhelming and thus the error, if any, in admitting the evidence was harmless. See Oregon Const, Amended Art VII, § 3; ORS 19.125.
Defendant next contends that the court improperly instructed the jury on the felony-murder rule. This issue has been resolved contrary to the defendant’s position in State v. Morris, 241 Or 253, 405 P2d 369 (1965), and State v. Tremblay, 4 Or App 512, 479 P2d 507, Sup Ct rev den (1971).
Affirmed.