Argued and submitted November 9, 1979, affirmed
February 25, reconsideration denied April 1,
petition for review allowed July 2, 1980

# STATE OF OREGON,
*Respondent,*

*v.*

# DOUGLAS LINN SHUMWAY,
*Appellant.*

(No. 79-2-17, CA 14464)

607 P2d 191

[657]

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Defendant was convicted of murder (ORS 163.115). Pursuant to ORS 163.115(5), he was sentenced to imprisonment for life, with the requirement that he serve not less than 25 years before becoming eligible for parole. We affirm.

Defendant killed Jerome Bernard in the apartment they shared as cotenants. Defendant claimed that he acted in self-defense. On the night of the killing, defendant and two guests were at the apartment when Bernard arrived. Bernard was intoxicated. He physically beat the defendant, and then threatened to beat the two guests. Defendant grabbed a gun he had earlier placed on a table, and he ordered Bernard to desist. Bernard began to move toward the defendant with his arm in a position to strike or to grab the gun. Defendant shot Bernard. At the time of the shot, Bernard was close enough to defendant to lunge at defendant or at the gun. Bernard fell and lay on the floor, but was apparently not motionless. Defendant then went to Bernard, said words to the effect that Bernard was dead, and shot him a second time. The second shot was the cause of death.

Defendant makes four assignments of error, three of which warrant discussion. He contends, first, that the 25-year minimum confinement period for murder under ORS 163.115(5), which was in effect at the time of the murder, is disproportionate to less severe penalties prescribed by ORS 163.105 for the more serious offense of aggravated murder, and that ORS 163.115(5) therefore violates various federal and state constitutional provisions, including Art I, § 16 of the Oregon Constitution, which provides as pertinent that " * * * all penalties shall be proportioned to the offense." Second, defendant argues that the trial court's self-defense instruction incorrectly implied to the jury that defendant could not be acquitted on grounds of self-defense unless he retreated from the decedent. Third, defendant claims that the court erred

[659]

by not permitting defendant to ask on *voir dire* about prospective jurors' attitudes toward capital punishment.

ORS 163.115(5) provides:

"(5) *Except when a sentence of death is imposed pursuant to section 3 of this 1978 Act,* a person convicted of murder shall be punished by imprisonment for life *and shall be required to serve not less than 25 years before becoming eligible for parole.*"

The emphasized language was added to ORS 163.115(5) by Oregon Laws 1979, ch 2, § 1, which was enacted through an initiative measure (Ballot Measure 8) submitted to the voters at the 1978 general election.[1]

Defendant contends that Ballot Measure 8, by establishing the 25-year minimum incarceration period, makes the penalty for murder more severe than the penalties prescribed for the more serious crime of aggravated murder by ORS 163.105. ORS 163.105 provides that certain acts of aggravated murder are punishable by a minimum confinement period of 30 years, which the State Board of Parole can ultimately reduce to 20 years, and that other acts constituting aggravated murder are punishable by a 20-year minimum incarceration period, subject to reduction to 15 years by the Board.

Defendant argues that the disparity in penalties is constitutionally impermissible. The state argues that there is no disparity in penalties because Ballot Measure 8 impliedly repealed the aggravated murder statutes, with their lesser penalties, and established a unified sentencing scheme for aggravated *and* "ordinary" murder.

---

[1] Section 3 of Oregon Laws 1979, ch 2 (Ballot Measure 8) requires the death penalty for murder if the trial court makes certain findings regarding the defendant and the offense. At the time of that ballot measure's adoption, there was no provision for the death penalty under either the murder statute or the aggravated murder statutes.

Defendant relies on *Cannon v. Gladden,* 203 Or 629, 281 P2d 233 (1955). In that case, as in *State v. Collis,* 243 Or 222, 413 P2d 53 (1966), the court held that sentences for attempts which exceeded the maximum penalties prescribed by statute for the crimes attempted violated the proportionality requirement of Art I, § 16. The state does not appear to contest defendant's proposition that aggravated murder as defined in ORS 163.095 was, prior to the adoption of Ballot Measure 8, a more serious crime than murder as defined by ORS 163.115. The state also does not refute the proposition that the 25-year incarceration requirement of ORS 163.115(5) is a more severe penalty than the penalties ORS 163.105 provided for aggravated murder. The state argues, however, that Ballot Measure 8 impliedly repealed and replaced the penalties under the aggravated murder statutes, and that there is therefore no disproportionality of penalties because there is no difference in penalties. We agree in substance with the state's argument.

By its terms, Ballot Measure 8 refers only to murder and the penalties therefor, and does not refer to aggravated murder or differentiate between kinds or degrees of murder. In his opinion at 39 Op Att'y Gen 419 (1978), the Attorney General assumed that the sponsors of the ballot measure did not "consider" the existing aggravated murder statutes when drafting the measure. The Attorney General nevertheless concluded in that opinion that the obvious intent of the sponsors was to create a unified punishment scheme for *all* murders: The intent was that persons convicted of *any* murder be punished by death or by life imprisonment subject to the 25-year minimum incarceration requirement.

It is apparent that the penalty provided by ORS 163.115(5), as amended, is in conflict with the penalties under ORS 163.105, and that the two statutes cannot be reconciled. Even leaving aside the fact that the kinds of conduct punishable under ORS 163.105 are more "serious" than some kinds of conduct to

[661]

which ORS 163.115(5) relates, it is self-evident that the requirement of a minimum of 25 years' confinement for *all* murders under ORS 163.115(5) as amended is not compatible with the sentencing scheme under ORS 163.105, which made parole effectively possible after 15 or 20 years for *some* murders. It is probably true, as the Attorney General's opinion states, that the sponsors of Ballot Measure 8 gave no attention to the existing penalties under ORS 163.105 when they drafted the penalty provisions of that measure. However, it has been recognized that the legislature's failure to consider or deal with a particular problem will not prevent the courts from construing a legislative Act as having a meaning which is consistent with common sense and with the overall purpose of the Act. *State v. Welch,* 264 Or 388, 392-93, 505 P2d 910 (1973). The same principle applies to legislation adopted by the people through the initiative. *Anthony et al. v. Veatch et al.,* 189 Or 462, 220 P2d 493, 221 P2d 575 (1950), *appeal dismissed,* 340 US 923 (1951).

We conclude that the amendment of ORS 163.115(5) by § 1 of Ballot Measure 8 impliedly repealed the penalties under ORS 163.105. *See State v. McIntire,* 22 Or App 161, 537 P2d 1151, *adhered to,* 22 Or App 611, 540 P2d 399, *rev den* (1975). We emphasize that we base our conclusion on § 1 of the measure, and not on the measure as a whole. ORS 163.105 relates to imprisonment for murder. Section 1 of the ballot measure amends ORS 163.115(5) by adopting a minimum imprisonment provision which is inconsistent with ORS 163.105. With the exception of § 1, all sections of the ballot measure relate to the death penalty. Section 1 is severable from the remainder of the measure. It is therefore unnecessary for us to consider whether the measure as a whole impliedly repeals ORS 163.105 when § 1, standing alone, has that effect. Whether or not sections of an Act are severable is to be determined from legislative intent. *Fullerton v. Lamm,* 177 Or 655, 163 P2d 941, 165 P2d 63 (1946). The clear intent underlying all of Ballot

Measure 8 was to increase the existing penalties for murder. We do not consider that it was the intent of the sponsors or the electorate to make the existence or validity of the measure's increased imprisonment provision dependent on the existence or validity of its separate capital punishment provisions.

Defendant next assigns error to the trial court's instructing the jury:

> "If you find from the evidence that the defendant killed [the decedent] under such condition as warranted and caused a reasonable belief on his part that he was in evident peril of life or serious physical injury, *that he did not have a reasonable opportunity to escape and avoid the affray,* and that he killed the deceased to preserve his own life or to protect himself from serious physical injury under the belief that it was necessary for this purpose, then the defendant, Douglas Linn Shumway, killed in self-defense, and you should return a verdict of not guilty * * *." (Emphasis supplied.)

Defendant argues that retreat is not a necessary element of self-defense under Oregon law, at least when the killing occurs in the dwelling of the person claiming to have acted in self-defense (*State v. Rader,* 94 Or 432, 186 P 79 (1919)), and that the emphasized language of the instruction communicated to the jury that defendant could not be acquitted on grounds of self-defense unless he attempted to retreat. Language in self-defense instructions, identical or substantially similar to the language defendant challenges, was approved by the Oregon Supreme Court in *State v. Joseph,* 230 Or 585, 371 P2d 689 (1962), and *State v. Barnes,* 150 Or 375, 44 P2d 1071 (1935). The facts in *Joseph* and *Barnes* differed in significant respects from those here. However, we understand the Supreme Court's opinions as holding as a matter of law that the instructions did not suggest that retreat was required, as well as holding that the instructions could not have been prejudicial under the facts of the

cases.[2] The issue defendant raises here is not whether he was required to retreat but whether the trial court's instruction suggested to the jury that retreat was necessary. We are bound by *Barnes* and *Joseph,* and it is for the Supreme Court rather than this court to determine that the holdings on the instruction issue in those cases should not extend beyond the facts of those cases.

The remaining assignment of error warranting discussion is that the trial judge abused his discretion by refusing to permit defendant to examine prospective jurors on *voir dire* about their attitudes toward capital punishment. Defendant contends that, although the court rather than the jury is responsible for determining whether a defendant convicted of murder will be sentenced to death or life imprisonment (Oregon Laws 1979, ch 2, § 3), a jury comprised entirely of persons who favor capital punishment is more likely to be "prosecution oriented" and more inclined to find guilt than a jury made up of persons who oppose capital punishment as well as those who favor it. Defendant argues that the court's refusing to permit him to ascertain the prospective jurors' views on capital punishment deprived him of the ability to take a relevant factor into account in making peremptory challenges.

---

[2] All of the cases cited in our discussion of this assignment of error were decided prior to the adoption of the 1971 Oregon Criminal Code. In *State v. Burns,* 15 Or App 552, 516 P2d 748 (1973), *rev den* (1974), we construed certain of the justification statutes enacted in 1971 (ORS 161.190 *et seq*) as codifying "the common law of self-defense and not [articulating] a new standard * * *." 15 Or App at 561. *Burns* did not deal directly with whether and when retreat or avoidance is a condition precedent to the justifiable use of deadly force in defense of one's person. However, *Burns* did point to *Rader* as one of the sources of the common law principles embodied in the justification statutes. In *Rader,* the Oregon Supreme Court held that the trial court erred in declining to give the following instruction requested by a homicide defendant who claimed self-defense:

> " 'I instruct you that when a man is where he has a right to be, retreat is not necessary and he is not bound to retreat until his back is at the wall, as is the old saying, but he may stand his ground and repel the attack and meet force with force if necessary, even to the extent of taking the life of his adversary.' " 94 Or at 443.

*See also State v. Gray,* 43 Or 446, 74 P 927 (1904). *See,* however, the Commentary to the proposed Code, at 24-25.

In *Witherspoon v. Illinois,* 391 US 510, 88 S Ct 1770, 20 L Ed 2d 776 (1968), the Supreme Court held that a murder defendant *was* denied an impartial jury on the issue of the penalty to be imposed[3] by an Illinois statute which required the exclusion for cause of any prospective juror having "conscientious scruples against capital punishment, or * * * opposed to the same." However, the court held that the defendant was *not* denied an impartial jury on the issue of guilt or innocence, as distinguished from the penalty determination. It stated:

> "The petitioner contends that a State cannot confer upon a jury selected in this manner the power to determine guilt. He maintains that such a jury, unlike one chosen at random from a cross-section of the community, must necessarily be biased in favor of conviction, for the kind of juror who would be unperturbed by the prospect of sending a man to his death, he contends, is the kind of juror who would too readily ignore the presumption of the defendant's innocence, accept the prosecution's version of the facts, and return a verdict of guilt. To support this view, the petitioner refers to what he describes as 'competent scientific evidence that death-qualified jurors are partial to the prosecution on the issue of guilt or innocence.'
>
> "The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction * * *." 391 US at 516-17.

Defendant relies on *State v. Barnett,* 251 Or 234, 445 P2d 124 (1968), in which the court held that a defendant accused of abortion should have been permitted to inquire on *voir dire* about the religious

---

[3] The jury, rather than the court, determined the penalty as well as guilt under the Illinois statutory scheme then in effect.

beliefs of veniremen. *Barnett* is not apposite. The question the defendant sought to ask prospective jurors in that case was directly relevant to a predisposing factor on the issue the jury was to decide—guilt or innocence of the act of abortion. The question the defendant sought to ask in this case, regarding jurors' attitudes toward a possible *penalty for* murder, was not directly relevant to the issue before the jury—guilt or innocence of the *act of* murder.

Affirmed.