Argued and submitted June 27, affirmed in part;
remanded for resentencing in part August 18,
reconsideration denied October 7, 1980
petition for review allowed July 14, 1981

STATE OF OREGON,
*Respondent,*

*v.*

GERALD ROBERT REAMS,
*Appellant.*
(Cases Consolidated)

(No. 112,276, Ca 16280)
(No. 113,303, CA 16281)
(No. 113,304, CA 17551)

616 P2d 498

Paul J. De Muniz, Salem, argued the cause for appellant. With him on the briefs was Garrett, Seideman, Hemann, Robertson & De Muniz, Salem.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Defendant appeals from his convictions for felony murder, burglary and attempted murder. We consider the seven assignments of error seriatim.

Defendant had had a tumultuous relationship with his wife. Their eight years of marriage were marked by separations and, on at least two occasions, suicide threats by defendant. There were two children. In April, 1979, defendant's wife decided to leave him. While he was away from home, she had the household furniture moved without informing him. He returned to find an empty house. Defendant drove to his parents' house and obtained their pistol, without their knowledge. Then he drove toward his wife's parents' house and parked several blocks away. No one was home. He let himself in with a key he had obtained from his wife but which he had not been authorized by her parents to use. Inside, he obtained a second gun from his father-in-law's night table. He loaded it, kept it with him and remained in the house.

When his in-laws returned home, defendant did not announce his presence but moved to the living room, where he could overhear them talking in the adjoining room. They had just returned from helping their daughter move into a new place. The father-in-law was sitting reading a newspaper when, without warning, defendant came into the room and shot him from behind with both guns, killing him instantly. Defendant then fired a shot at his mother-in-law, wounding her in the side. He tried to shoot her again, but the gun misfired. Defendant then forced his mother-in-law out of the house to take him to his wife. Outside, his mother-in-law managed to get someone to call the police, who apprehended defendant.

[909]

Defendant was indicted separately for murder,[1] felony murder,[2] burglary[3] and attempted

[1]

"The above named defendant is accused by the Grand Jury of the county of Marion and State of Oregon, by this indictment of the criminal offense of MURDER committed as follows:

"The above named defendant on the 18th day of April, 1979, in the County of Marion and State of Oregon then and there being, did then and there intentionally, unlawfully and feloniously cause the death of another human being, to-wit: Delmar LaVerne Gibbons, by shooting said Delmar LaVerne Gibbons with a revolver, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated at Salem, in the county aforesaid, this 20th day of April, 1979."

[2]"The above named defendant is accused by the Grand Jury of the County of Marion and State of Oregon, by this indictment of the criminal offense of MURDER committed as follows:

"The above named defendant on the 18th day of April, 1979 in the County of Marion and State of Oregon then and there being, and during the commission of the crime of Burglary in the First Degree by the defendant, did then and there intentionally, unlawfully and feloniously cause the death of another human being, to-wit: Delmar LaVerne Gibbons, by shooting Delmar LaVerne Gibbons with a revolver, and the following circumstances then and there existed:

"1. The above-described conduct of the said defendant which caused the death of Delmar LaVerne Gibbons was committed deliberately and with the reasonable expectation that the death of Delmar LaVerne Gibbons would result from the defendant's conduct; and

"2. There was, and is, a probability that said defendant will commit criminal acts of violence that constitute a continuing threat to society; and

"3. The said defendant acted without provocation, on the part of Delmar LaVerne Gibbons, during the above-described conduct, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated at Salem, in the county aforesaid, this 20th day of June, 1979."

[3]"The above named defendant is accused by the Grand Jury of the County of Marion and State of Oregon, by this indictment of the criminal offense of BURGLARY IN THE FIRST DEGREE committed as follows:

"The above-named defendant on the 18th day of April, 1979, in the County of Marion and State of Oregon then and there being, did then

murder.[4] The first three indictments related to the killing of the father; the last to the shooting of the mother. Defendant went to trial with the objective, as stated by his counsel on appeal, that the homicide might be reduced to manslaughter by the jury, based on his claim of extreme emotional disturbance. The jury, by separate verdicts, convicted defendant of felony murder and burglary. Defendant then pled guilty to attempted murder. The trial court merged the burglary into the felony murder and imposed a sentence of life imprisonment (25 years of which to be served without possibility of parole) for the felony murder and 20 years for the attempted murder, consecutive to the murder sentence.

Defendant first assigns as error the overruling of his demurrer to the felony murder indictment for failure to negative a statutory exception. ORS 163.115(1)(b)[5] provides in felony murder cases that the death must be of a person other than one of the

and there knowingly, unlawfully and feloniously enter and remain in a building, to-wit: a dwelling, located at 4034 Carolina Avenue Northeast, Salem, Oregon, with the intent to commit the crime of Assault therein, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated at Salem, in the county aforesaid, this 20th day of June, 1979."

[4] The murder and attempted murder indictments were returned on April 20, 1979. The felony murder and burglary indictments were returned June 20, 1979.

[5] ORS 163.115 provides in relevant part:

"(1) Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance;

"(b) It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree

participants in the felony. Defendant contends that the indictment was required to include the statement that the victim was not a participant in the crime. We held in *State v. Keys,* 25 Or App 15, 22, 548 P2d 205, *rev den* (1976), that extreme emotional disturbance is not required to be negated in a murder indictment, despite its being a statutory exception. We stated:

"The rules governing the sufficiency of indictments are statutory. ORS 132.510. The only relevant statute, ORS 132.550, provides:

" 'The indictment shall contain substantially the following:

" '* * * * *

" '(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended * ** '

"In recent years, the trend in Oregon courts has been to require substantially less specificity in indictments. The rationale in the cases has been that, although the defendant has a constitutional right to notice, this need not be accomplished solely by the indictment. Notice can be based on the indictment plus the language of the relevant statute. Notice can be based on the indictment plus the relatively new criminal discovery statutes. And the ultimate form of

---

or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there by any, causes the death of a person other than one of the participants; or

"(c) It is committed by a person, acting either alone or with one or more persons, who places or discharges a destructive device or bomb or who commits or attempts to commit aircraft piracy.

"(2) For the purposes of paragraph (a) of subsection (1) of this section, a homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be."

notice is the prosecution's evidence; we have held that if the defendant is genuinely surprised thereby, he is entitled to a continuance."

■ In *State v. Fish,* 282 Or 53, 57, n 5, 577 P2d 500 (1978), the Supreme Court noted prior cases holding that felony murder need not be pled separately from intentional murder. *See, e.g., State v. Earp,* 250 Or 19, 26-27, 440 P2d 214, *cert den* 393 US 891, 89 S Ct 212, 21 L Ed 2d 170 (1968). The state here did more than it was required to do by indicting defendant by a specific felony murder indictment. Even though that indictment also contained terms relating to intentional homicide, it was sufficient to direct attention to the felony murder statute and thus to notify defendant fully of the charge against him. The indictment was not defective. *See also, State v. Taylor,* 13 Or App 192, 193, 509 P2d 50 (1973) (no requirement to negative lack of justification or excuse in murder indictment); *State v. Alexander,* 6 Or App 526, 532-533, 487 P2d 1151 (1971) (unnecessary to negative exceptions in indictment for unlawful possession of drugs).

■ Defendant next assigns as error the instruction that extreme emotional disturbance is not a defense to felony murder. On its face, ORS 163.115(2), *supra* n 5, appears to allow the consideration of extreme emotional disturbance in mitigation only in cases of intentional murder under ORS 163.115(1)(a). Furthermore, we held in *State v. O'Berry,* 11 Or App 552, 557, 503 P2d 505 (1972), *rev den* (1973), overruled on other grounds in *State v. Corbin,* 15 Or App 536, 549-550, 576 P2d 1314 (1973), *rev den* (1974), that extreme emotional disturbance is not an available defense in felony murder based on rape, which is not a crime involving premeditation. *See also, State v. Jensen,* 209 Or 239, 271, 289 P2d 687, 296 P2d 618 (1957) (mental defectiveness short of insanity not an available defense to reduce felony murder based on robbery to manslaughter). It follows that extreme emotional

[913]

disturbance is not available in felony murder cases based upon an underlying burglary.

The third assignment concerns the admission of three photographs of the victim after defendant offered to stipulate to facts regarding the circumstances of the death. One photograph, taken from several feet away, shows the victim more or less upright on a couch, a newspaper in his lap, some blood visible on the cheek and chin. The other two photographs are close-up views of the side and back of the head. The prosecutor argued to the trial court that the photographs would be helpful in understanding evidence concerning procedures followed for recovery of the bullets, and he also suggested that they would assist the jury, in ways not specified, in understanding defendant's possible defenses. The trial court admitted the exhibits after stating:

> "They are not gruesome pictures, unless you want to argue that any picture of a dead body is gruesome.
>
> "They are not autopsy pictures, there are not massive amounts of blood, and I think they are of very minimal offensiveness to the jury and with a minimum amount of prejudice.
>
> "It's true, as *** [the prosecutor] points out, in this kind of a case, the state must establish certain things. Perhaps these pictures would assist the jury in determining some of those factors."

The issue is whether the probative value of the evidence outweighed its possible prejudicial value. *State v. McCready,* 31 Or App 591, 595, 571 P2d 160 (1977). Defendant contends that the photographs were not relevant for any purpose when admitted, particularly after the stipulation was offered. Defendant relies on *State v. McKendall,* 36 Or App 187, 198, 584 P2d 316 (1978), for the proposition that photographs are improperly admitted where the only issue is that of intent after a stipulation is offered. There, however, the defendant was an accomplice, who stipulated that the victim was murdered. The only issue was her intent as an accomplice, that is, whether she intended

that the victim be murdered by another. The court held that the photographs, taken during an autopsy, were improperly admitted when the manner of death was not a disputed issue. A primary issue in this case was the state of mind of the defendant who killed the victim. The circumstances of the manner of death were relevant to that inquiry. We noted in *State v. Yost*, 28 Or App 803, 805, 561 P2d 657, *rev den* (1977), that *mens rea* can rarely be shown by direct evidence. The stipulation, an attempt in part to describe visual aspects of the death of the victim in words,[6] did not necessarily convey all the relevant circumstances.

In arguing that the photographs were not offered for any legitimate purpose and were prejudicial, defendant points out that the prosecution did not refer to or make use of them in any way once they were admitted, thereby in defendant's view confirming that they were offered only to show the victim's body to the jury. While it is true that photographs once admitted into evidence do not have to be referred to further to have an effect on the jury, which can review them during its deliberations, we are not persuaded that at time of admission the possible prejudice clearly

---

[6] The proposed stipulation stated in relevant part:

"4. That Gerald Reams shot and killed Delmar LaVerne Gibbons at close range with two guns.

"5. That one bullet entered the posterior occipital area of the scalp, 6.5 inches below the vertex of the scalp, and caused the death of the victim by complete, traumatic transection of the upper cervical spinal cord at its junction with the medulla oblongata with resultant acute cardiorespiratory insufficiency and failure. That the path of the bullet is back to front, right to left and somewhat downward.

"6. That a second bullet entered the left face, temporal area of zygomatic (malor) prominence, of the victim. That the path of the second bullet is left to right, slightly back to front and slightly downward.

"7. That Delmar LaVerne Gibbons was seated at a couch in the family room when the bullets struck him, with the newspaper in his lap, his feet crossed at the ankles, and that he was seated in a relaxed, non-aggressive, non-defensive posture. That the wounds Delmar LaVerne Gibbons suffered caused bleeding."

outweighed the probative value of the photographs. They do have an emotional potential in that they capture the suddenness with which an ordinary domestic scene was transformed into a tragedy, but that was not so much unwarrantably prejudicial to the defendant as it was probative of the circumstances of the occurrence, not covered by the stipulation.

■ The question whether exhibits possess sufficient probative value in relation to their possible prejudicial effect to warrant their admission is within the sound discretion of the trial court. *State v. McKendall, supra,* 36 Or App at 197. We conclude that the trial court did not err in admitting the photographs.

The fourth assignment of error is the trial court's failure to give the jury defendant's requested instruction on criminal trespass as a lesser included offense of burglary. The state contends that because the burglary conviction was merged into felony murder, the error was harmless, even if the instruction should have been given. But this instruction was potentially the most important one from the defendant's point of view in a felony murder trial. If the jury were to find that defendant lacked the intent to commit a crime while unlawfully entering or remaining in the house, *see* ORS 164.225 and ORS 164.215,[7] that entry

---

[7] ORS 164.225 provides in relevant part:

"(1) A person commits the crime of burglary in the first degree if he violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom he:

"(a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or

"(b) Causes or attempts to cause physical injury to any person; or

"(c) Uses or threatens to use a dangerous weapon."

ORS 164.215 provides in relevant part:

"(1) A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein."

[916]

or remaining would be criminal trespass, a misdemeanor, and not burglary, a felony. There would then be no underlying felony, and the prosecution would have had to prove homicidal intent as part of the act of killing in order to obtain a conviction for murder.

■ A requested instruction on a lesser included offense should be given if there is evidence to support it. *State v. Davis,* 44 Or App 549, 552, 606 P2d 671, *rev den* 289 Or 45 (1980); *State v. Thayer,* 32 Or App 193, 196, 573 P2d 758, *rev den* 283 Or 99 (1978). In this case the burden was on the state to show that defendant entered or remained in the house with the intent to commit a crime, *i.e.* here, assault. The state maintains that because in fact an assault took place, the requested instruction need not have been given, since to find defendant guilty of only criminal trespass would have required the jury to reject the fact that an assault had occurred. The jury's verdict indicates that it believed the intent to commit assault was present at some point.

The uncontroverted facts are that defendant obtained and loaded a second gun while in the house and secreted himself inside for some time before bursting in on the victims and shooting them. We do not see how the jury, short of its disbelieving all the evidence, could have rationally drawn the inference that defendant did not intend to cause serious physical injury to the victims when he shot them at close range, without there being any evidence to the contrary. With regard to his intent, defendant testified only that at the time he entered the house he did not intend to kill his father- and mother-in-law, and that, once inside, he did not reveal himself initially so that he might overhear news of his wife's whereabouts. Neither of those assertions, if believed, bring into dispute defendant's state of mind at all times up to when he shot the victims.

Neither at trial nor on appeal has defendant argued that he never formed an intent to commit

assault at any time while inside the house. In his brief he argues only that because there was evidence *(i.e.,* the defendant's own testimony) that he did not intend to assault anyone at the time he *entered* the house, the lesser included offense instruction ought to have been given. In recognition that the burglary statutes also relate to state of mind also while one *remains* unlawfully, he contended at argument that the intent to remain and the intent to commit a crime must be formed simultaneously for purposes of establishing burglary. The jury was instructed that it was sufficient if it should find "that the defendant developed the intent to commit a crime while he remained unlawfully in a dwelling." Defendant did not except to that instruction nor request any instructions on the issue.

■ ■ The test for the necessity of giving a lesser included offense jury instruction is whether there is a disputed issue of fact which warrants submission of the lesser included offense to the jury. *State v. Williams,* 270 Or 152, 158, 526 P2d 1384 (1974). The jury could have totally disbelieved the evidence in this case and acquitted defendant of both burglary and criminal trespass. However, in order to find defendant guilty *only* of criminal trespass, the jury would have had to have accepted in part and rejected in part the uncontradicted evidence presented at trial, that is, that defendant remained unlawfully inside and shot the victim but did not intend to commit assault when he did so. *See State v. Williams, supra,* 270 Or at 157; *State v. Davis, supra,* 44 Or App at 552-553. It was not error to refuse the requested instruction. *State v. Palaia,* 289 Or 463, 614 P2d 1120 (1980).

■ Defendant assigns as the fifth error the denial of his motion for acquittal made on the ground that felony murder does not apply where the underlying felony is a burglary in which the crime intended is assault. Defendant cites *People v. Wilson,* 1 Cal 3d, 431, 82 Cal Rptr 494, 462 P2d 22 (1970), as authority

for reasoning that applying the felony murder rule in such cases produces artificial results by creating an arbitrary distinction between acts committed outside a dwelling where the defendant's state of mind is at issue and those committed inside, where it is not. In *State v. Tremblay,* however, 4 Or App 512, 517, 479 P2d 507, *rev den* (1971), we said that felony murder does apply where burglary is based on intent to commit assault, for "it is obvious that the legislature intended to give added protection to persons who are within a dwelling place." We also noted, *supra* at 519, n 2, that "[w]hatever the holding may be in other states, our decision depends upon our own statute and the decision in *Morris.*" In *State v. Morris,* 241 Or at 255, 405 P2d 369 (1965), the Supreme Court upheld a felony murder conviction based on burglary, although the burglary may have been incidental to defendant's main purpose, thus depriving defendant of the mitigating defense of "crime of passion."

Defendant also cites *State v. Branch,* 244 Or 97, 100, 415 P2d 766 (1966) (assault resulting in death merges into the murder so that a felony murder instruction is improper), as support for his motion for acquittal. We rejected this contention in *State v. Drew,* 8 Or App 471, 477, 494 P2d 270, 273, *rev den* (1972):

> "*** *Branch* holds that an assault resulting in death merges into second degree murder so that only murder, not assault and murder, can be charged. The effect of defendant's argument, if it were successful, would be nullification of the first degree murder statute insofar as it applies to deaths inflicted during assaults with intent to commit robbery. The *Branch* decision was made for the purpose of preserving the distinction between degrees of murder and manslaughter. 244 Or at 100. It is not applicable here. ***"

We recognize that *Morris, Tremblay, Branch* and *Drew* all pre-date the 1971 revision of the criminal code, but we do not believe the revision changed the law in the respects now under examination.

[919]

■ In the sixth assignment of error defendant argues that the sentence of life imprisonment, 25 years of which is to be served without possibility of parole, imposed for the felony murder conviction is prohibited by provisions of the United States and Oregon Constitutions. Defendant first contends that the conflict between the minimum penalties provided in ORS 163.105 for aggravated murder, and in ORS 163.115 for murder, violates the equal protection and due process provision of both constitutions. That contention has been resolved in *State v. Shumway,* 44 Or App 657, 662, 607 P2d 191, *rev allowed* 289 Or 337 (1980), holding that the amendment of ORS 163.115(5) by Oregon Laws 1979, chapter 2, section 1, as a result of the passage of Ballot Measure 8 in 1978, impliedly repealed the penalties under ORS 163.105, thus eliminating the apparent conflict.

■ ■ Defendant also argues that the sentence imposed under ORS 163.115(5),[8] involving a minimum of 25 years without parole, violates Article I, section 15 of the Oregon Constitution. That section provides:

"Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

It is still the law of this state that the death penalty is not prohibited under this section of the Oregon Constitution. *State v. Finch,* 54 Or 482, 498-499, 103 P 505 (1909); *State v. Anderson,* 10 Or 448, 465, (1882). *A fortiori,* a sentence of 25 years without parole, which can hardly *more* conclusively foreclose the possibility of reformation than death, is not prohibited by the same provision.

■ Defendant last assigns as error the imposition of a 20-year consecutive sentence for attempted

---

[8] ORS 163.115(5) provides:

"Except when a sentence of death is imposed pursuant to ORS 163.116, a person convicted of murder shall be punished by imprisonment for life and shall be required to serve not less than 25 years before becoming eligible for parole."

murder without clearly articulating the reasons for the sentence, as required in *State v. Garcia,* 288 Or 413, 432, 605 P2d 671 (1980). In *Garcia,* the Supreme Court said:

> "In light of this mandate for articulated sentencing rationales and the current recognition that consecutive sentences are appropriate only when the defendant poses an unusual risk to the safety of the public, we hold that the trial judge must affirmatively state the reasons for imposing consecutive sentences for separate offenses arising from the same criminal episode. These reasons must be consistent with the legislative policies concerning proportional sentencing, rehabilitation, deterrence, and protection of the public."

In this case, the sentencing judge did not have the guidance of *Garcia* in the sentencing, and his stated reasons focussed only upon the circumstances of the offenses and the doubt whether an appellate court would uphold the statutory minimum 25 year sentence without parole. We remand the attempted murder case for resentencing in light of *Garcia.*

Nos. 16281 and 17551 are affirmed; No. 16280 is remanded for resentencing.