Argued and submitted October 2, 1981, affirmed February 8, reconsideration denied April 1, petition for review denied April 27, 1982 (293 Or 103)

## WILLIAM GREEN SMITH, III,
*Appellant,*

*v.*

## CUPP,
*Respondent.*

(No. 113,291, CA A20006)

640 P2d 682

Jossi Davidson, Silverton, argued the cause and filed the brief for appellant.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Petitioner appeals from a denial of relief in a post-conviction proceeding. In 1975, petitioner pled guilty to a charge of murder committed by recklessly causing the death of his four-year-old son under circumstances manifesting extreme indifference to the value of human life.[1] In 1980, petitioner filed an amended petition for post-conviction relief, amended further at time of trial to include the allegation that

> "petitioner's plea of guilty was not knowing, intelligent and voluntary in that petitioner did not know all the elements of the crime with which he was charged and did not know he had a possible defense to the charge."

Petitioner's primary post-conviction theory,[2] as developed on appeal, is that at the time of the murder trial he was misadvised by his trial counsel that it was his burden to prove that he was experiencing extreme emotional disturbance, which would operate to reduce murder to manslaughter.[3] Under *State v. McCoy*, 17 Or App 155,

---

[1] ORS 163.115 provided, in relevant part, before amendment in 1975:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally; or

"(b) It is committed recklessly under circumstances manifesting extreme indifference to the value of human life; or

"(c) It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants."

[2] Petitioner also contended that he understood when he made his guilty plea that he would receive a reduced sentence; but the record shows that the trial court judge made it quite clear that the statutes required him to impose a life sentence.

[3] ORS 163.125 provided, in relevant part, before 1975 amendments:

"(1) Criminal homicide constitutes manslaughter when:

"(a) It is committed recklessly; or

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation; or

166, 521, P2d 1074 (1974), the state had the burden to disprove "extreme emotional disturbance," once it was raised by the evidence. The state concedes that petitioner was so misadvised. Petitioner argues that he was, therefore, not cognizant of one "possible defense *available*" to him (emphasis added), *see Huffman v. Alexander,* 197 Or 283, 322, 251 P2d 87, 253 P2d 289 (1953), and that, therefore, his guilty plea was not "understandingly" made.

The post-conviction court based its denial of relief on several grounds set forth in its letter opinion,[4] which stated:

"The evidence, which Petitioner has admitted is substantially correct, shows that the beatings of his son continued over an extended period of time and were, from time to time, interrupted by periods of as much as forty-eight hours where Petitioner was absent from contact with the child. *The record both at the trial and at this hearing is absolutely devoid of any evidence indicating that there was*

---

"(c) A person intentionally causes or aids another person to commit suicide.

"(2) For the purposes of paragraph (b) of subsection (1) of this section, the reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be."

[4] The post-conviction court ruled that "extreme emotional disturbance" under ORS 163.125 was not available as a matter of law to reduce *reckless* murder to manslaughter. The state argues, in support of that ruling, that the statute is ambiguous, in that extreme emotional disturbance could hardly have been intended to reduce felony murder (ORS 163.115(1)(c)) to manslaughter, and that parenthetical language in the commentary of the Criminal Law Revision Commission indicates the rule was intended to be limited to murder committed by "intentionally or knowingly killing another." We do not find the statute ambiguous, although it apparently could have led to anomalous results. In 1975, the legislature reduced the offense of reckless homicide evidencing extreme indifference to human life from murder to manslaughter. Or Laws 1975, ch 577, § 2; ORS 163.118 (1)(a).

The post-conviction court also ruled that petitioner's behavior, because it was the result of ongoing mental illness rather than a "temporary disturbance in an otherwise normal individual," *see State ex rel Johnson v. Woodrich,* 279 Or 31, 46, 566 P2d 859 (1977) (Howell, J., dissenting), could not have been intended by the legislature to fall within the definition of extreme emotional disturbance. *But see, State v. Corbin,* 15 Or App 536, 550, 516 P2d 1314 (1973), *rev den* (1974), overruling *State v. O'Berry,* 11 Or App 552, 556, 503 P2d 505 (1972), insofar as it injected a non-statutory requirement that the event triggering the homicide be "unexpected and provocative."

*a reasonable explanation for a disturbance (if it existed),* let alone for it to be determined from the standpoint of an ordinary person in the actor's situation and under the circumstances the actor believed to exist. ORS 165.125(1)(b) and (2), as it existed in 1975." (Emphasis added.)

The weakest link in petitioner's post-conviction case is the contention that he was prejudiced by his counsel's misadvice because there is a substantial possibility that he would succeed on retrial in reducing the murder conviction to manslaughter. Petitioner's sole defense at the murder trial was that the victim's fatal injuries were the result of his having fallen out of a tree. On the second day of trial, the state's eyewitness testified at length about petitioner's habitual beatings of the child. The witness testified that the child went into convulsions, and eventually died, after petitioner had repeatedly struck him with a leather belt, hung him, stripped naked, by the arms and bashed his head against a wall and door. This abuse had been going on intermittently throughout the entire night before the child died. The day after that testimony was given, petitioner entered a guilty plea. At that time he admitted on the record in open court that the testimony of the eyewitness was "substantially accurate." At the post-conviction hearing, the sole evidence of *any* explanation for petitioner's extreme behavior came from a psychologist who had been treating petitioner on a regular basis since the conviction in 1975. He stated that petitioner, at the time of the homicide, had exhibited the classic characteristics of a child-abusing parent; the psychologist referred to petitioner's obsessive preoccupation with excessive strictness and physical punishment as discipline. He described petitioner's inability to control his explosive anger when he saw his child "cowering" before him, triggering the extreme physical violence directed at the child. The psychologist termed that reaction "irrational."

This court has stated that the reasonableness of the explanation for a defendant's extreme emotional disturbance is a question "completely" for the jury. *State v. Green,* 18 Or App 310, 319, 525 P2d 205 (1974), *reversed on other grounds* 271 Or 153 (1975), citing *State v. Corbin,* 15 Or App 536, 548-549, 516 P2d 1314 (1973), *rev den* (1974).

In *Corbin,* we were principally concerned with a jury instruction which improperly stated that the event triggering the homicide must be both unexpected and provocative. We held that "the question of whether the extreme emotional disturbance has 'reasonable explanation' is entirely for the jury to decide without any requirements other than those enumerated in [ORS 163.125]." *See* n 3, *supra.* The test of the statute, however, by its own terms, is not completely subjective, but retains aspects of an objective standard, as indicated by the reference to *"reasonable* explanation," *"ordinary* person" and "reasonably believes." *See also,* Proposed Oregon Criminal Code, 88-90, Commentary, § 89 (1970).[5] Given the record before it,[6] the post-conviction court did not err in concluding, in effect, that there was not a realistic possibility that a jury could have found petitioner had a reasonable explanation for his "extreme emotional disturbance."

---

[5] The commentary to the Oregon Criminal Code of 1971 by the Criminal Law Revision Commission, § 89(C), states, in relevant part:

"The section makes major changes in the law of manslaughter in Oregon. First, it changes the basic test in what is now the voluntary manslaughter statute. Voluntary manslaughter is defined in ORS 163.040(1) as the killing of another intentionally without malice and deliberation 'upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible.' This traditional formula is replaced by the more subjective concept embodied in paragraph (b) of the draft section which treats on a parity with provocation cases in the classic sense, situations where the provocative circumstance is something other·than an injury inflicted by the deceased on the actor but nonetheless is an event calculated to arouse extreme mental or emotional disturbance. The draft section also introduces a large element of subjectivity, though it is only the actor's 'situation' and 'the circumstances as he believes them to be,' not the defendant's scheme of moral values, that are thus to be considered. *The ultimate test, however, is objective; there must be 'reasonable' explanation or excuse for the actor's disturbance. Thus, the draft retains a certain degree of the objective standard but turns away from the present Oregon law which apparently gauges the accused's acts on a purely reasonable man test without reference to the accused's circumstances or relevant personal characteristics."* (Emphasis added.)

It is to be noted that the commentary is to a version of the section which did not contain the provision, later added by the legislative committee: "which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act." The legislative committee also added the concept that the circumstances be those as the actor *reasonably* believed them to be, thus adding another objective element. *See* discussion of legislative history in *State v. McCoy,* 17 Or App 155, 173-174, n 3, 521 P2d 1074 (1974) ((Tanzer, J., specially concurring).

[6] The record does not disclose that in the original trial petitioner was prepared to put on any testimony, expert or lay, regarding his mental state.

Petitioner's burden before the post-conviction court was to demonstrate, by a preponderance of the evidence, that the misadvice of his trial counsel was prejudicial. *See Dixon v. Gladden,* 250 Or 580, 588, 444 P2d 11 (1969); *Boag v. State,* 44 Or App 99, 101, 605 P2d 304 (1980). Petitioner failed to meet that burden.

Affirmed.