Argued April 9, affirmed May 16, 1962

# STATE OF OREGON *v.* JOSEPH

371 P. 2d 689

*David E. Card,* Klamath Falls and *Freeman C. Murray,* Klamath Falls, argued the cause and filed briefs for appellant.

*Dale T. Crabtree,* District Attorney, Klamath Falls, argued the cause for respondent. With him on the brief were Sam A. McKenn and John R. Thomas, Deputy District Attorneys, Klamath Falls.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

SLOAN, J.

Defendant was convicted of the manslaughter of one Okey Eugene Richards. He appeals from the judgment which followed the conviction. Defendant admitted the killing. He claimed it was done in self-defense. There are five assignments of error. The one assignment of substantial merit is directed at a part of the instructions on self-defense. The assignments do not require a detailed statement of the facts.

During the afternoon of September 20, 1959, defendant shot and killed Richards and another man

named Deman. On and prior to that date, defendant was employed on a ranch near Chiloquin in Klamath County. He lived in a small cabin on the ranch. Earlier on that date and on the day before Deman and other men, including Richards, had visited defendant at the latter's cabin. There had been a considerable amount of wine drinking. Defendant and Deman had quarreled during prior visits. Defendant testified that on the next to the last visit that he had ordered Deman to leave the premises and that Deman left with the statement that he would return and "gut" defendant.

Defendant then testified that Deman and Richards did return. He said that Deman drove his car close to the porch on the front of defendant's cabin. Defendant had prepared for the visit by placing his loaded 30-30 rifle close at hand and by placing some additional shells in his pocket; that Deman got out of the car with a bottle of wine in one hand and a knife in the other. Deman moved to the rear of the car, away from defendant. The two men were then apparently about 12 or 15 feet apart. According to defendant, and he is the only living eye-witness, some heated words were exchanged and defendant fired two shots over Deman's head to warn him to stay away. Defendant claims this did not have the desired effect and that Deman advanced towards him and so defendant shot several times into Deman's body, killing him instantly. It should be mentioned that defendant was indicted for first degree murder for the killing of Deman but was tried and acquitted prior to the trial of the instant case.

Defendant swore that after Deman's body fell he walked to it and saw that he was dead. He then looked in the car at Richards who, defendant said, was in the

act of grabbing a knife from the seat of the car and yelled at defendant that he was going to kill him for shooting his friend. Defendant testified that he then fired a shot thru the window of the car to warn Richards but Richards got out of the car and moved behind the back of the car, defendant moved to the front of the car; that he called to Richards and that Richards then came towards him brandishing the knife; that defendant fired at him and the shot hit Richards' hand knocking the knife from his grasp. He said that Richards then stooped to pick up the knife with his other hand and defendant then fired other shots which killed Richards. A pathologist testified that there was one bullet hole in Richards' head which had been fired after Richards' heart had stopped and that the muzzle of the gun had been not more than 18 inches from Richards' head when it was fired.

Although no one else was present at the time of the shooting, another man was asleep in a nearby house when the shooting happened. There is direct conflict between the testimony of that man and the testimony of defendant as to what happened after the shooting. The witness testified that defendant came to the house and got knives from the kitchen which he then took and put into the hands of the dead men. Defendant, of course, denied this. There was, in evidence, the testimony of police officers and others as to statements said to have been made to them or in their hearing by defendant. Some of the statements tended to refute defendant's testimony. Efforts made by defendant during the trial to impeach the testimony of some of the state's witnesses form the basis for the first two assignments of error.

■■ The first assignment claims error because the court refused to permit a leading question be asked

of one of defendant's witnesses. The question was: "Now, after Mr. Jones asked Mr. Joseph what had happened I will ask you specifically if Mr. Joseph replied: 'I just shot a couple of son-of-bitches?'" Whether or not a leading question may be asked in direct examination is strictly within the discretion of the judge. *Tucker v. State Ind. Acc. Comm.*, 1959, 216 Or 74, 81, 337 P2d 979. There was no abuse in this instance.

■ The second assignment also relates to an effort to impeach a witness for the state. The witness, named Murch, had been asked if he had engaged in a conversation about this case with another man named Hood when the two of them were confined in a jail. Murch denied that he talked with Hood at all. Hood was then called by defendant. He was first asked if he had engaged in talk with Murch about this case and he said that he had. He was then asked to relate the alleged conversation with Murch. The court refused to permit Hood to testify to the actual conversation. The court ruled that "You have answered as far as you have laid a foundation for right now." This, too, is a matter for the exercise of the trial court's discretion. There was no abuse in this instance. *State v. Nortin*, 1943, 170 Or 296, 321, 133 P2d 252.

The third assignment is the more critical one. The court's instructions on self-defense were long and overly repetitious. The exceptions taken by defendant are as follows:

"Mr. Card: I will respectfully take exception to the Court's instruction as follows: 'The circumstances must have been such as to warrant such a belief in the mind of a person of ordinary reason and firmness in the situation in which he was placed and it must have appeared to him that there

was no other reasonable means of avoiding or declining the combat, if any you find.'

"The Court: Taking exception to that?

"Mr. Card: I am taking exception to that, Your Honor, on the basis that this implies to the jury that the defendant has a duty to retreat.

"The Court: Does it say retreat?

"Mr. Card: No. I will further take exception your Honor, to that portion of your charge contained on page 11, and the words 'danger that cannot, apparently, be avoided by adopting incidents less violent than that of taking human life.' For the same reason, this implies to the jury that—

"The Court: You may have your exception.

"Mr. Card: (Continuing) he would be required to retreat.

"The Court: Is that there?

"Mr. Card: No, it is not here. The basis of my exception is that it implies to the jury that he initially has a duty to retreat."

■ We do not agree with defendant that the part of the instruction quoted implies a duty to retreat and we do not think the jury would have so accepted it as applied to the evidence in this case. Furthermore, the language complained of is substantially the same as that which has been approved by the court in other cases. In *State v. Porter,* 1897, 32 Or 135, 157, 49 P 964, the court approved an instruction which told the jury that the danger to the defendant "must be absolute, imminent and unavoidable, * * *." In *State v. Holbrook,* 1920, 98 Or 43, (188 P 947; 192 P 640; 193 P 434) beginning at page 70, Justice BURNETT gives an extensive review of some of the earlier cases on this subject including *State v. Porter,* supra and again sustained the use of similar language. The

Porter case was again approved in *State v. Banks,* 1934, 147 Or 157, 170, 32 P2d 571. The use of the word "avoid" or "avert" in the instruction on self-defense is generally approved. 4 Warren, Homicide, Perm. Ed., 1938, § 338, 249. In *State v. Butler,* 1919, 96 Or 219, 186 P 55, an instruction of similar import was approved. However, in the Butler case the instruction was challenged for other causes. In *State v. Nodine,* 1953, 198 Or 679, 714, 259 P2d 1056, the court speaking by Justice LUSK, said much the same thing in different words: "Any civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of absolute necessity."

■ In this case the whole of the evidence warranted the use of the challenged language in the instruction. It was the duty of the court to instruct so that the jury could properly weigh all of the evidence, not just a part of it. *State v. Holbrook,* supra, 98 Or at 69. 4 Warren, Homicide, supra, 285.

There were many variables in the evidence. For example, the intoxication of the parties. The jury could easily have found that the two victims were too intoxicated to have caused a serious threat of harm to anything or anybody. The jury could have believed that neither of the two victims were armed with knives and there was no danger present at all. The jury could have weighed the threat presented by a man with a knife against a man with a rifle. Also, the jury could have found that, in respect to Richards, defendant was as much or more of an aggressor than Richards was. It is important to keep in mind that defendant was here charged with the killing of Richards, not Deman. The difference, or similarities, between the two killings should not be confused. The

court's instruction was such that the jury could not have doubted its duty to acquit defendant if defendant's testimony was to be accepted at face value. On the other hand, if some part or all of defendant's testimony was not believed, or if the jury found greater credibility in the testimony of other witnesses the other instructions properly told the jury to find defendant guilty of some degree of homicide. We do not believe that the assignment demonstrates error, let alone prejudicial error.

■ Assignment four is related to assignment three. It complains of the failure of the court to give a requested instruction. The requested instruction would have told the jury that:

> "Where an assault is precipitated against a person without provocation, and is of such a character as to indicate to a reasonable mind acting upon appearances that the danger to his life or the infliction of great bodily harm is imminent, the assailed is justifiable in killing his aggressor if necessary to avert the consequences upon himself, and need not consider on the moment whether he may avert the impending danger or avoid the taking of the life of his antagonist by retreating, or resorting to some other expedient less violent. So that if a man, being upon his own premises, or in a place where he has a right to be, is assailed without provocation by a person with a deadly weapon, and apparently seeking his life, he is not obliged to retreat, or consider whether he could safely do so, but may stand his ground and meet the attack in such a way and with such force as, under all the circumstances, he at the moment honestly believes and has reasonable ground to believe is necessary to save his own life or protect himself from great bodily harm."

The request was taken from language used in an opinion by Justice WOLVERTON in *State v. Gibson*, 1903,

43 Or 184, 192-193, 73 P 333. The request demonstrates the vice, frequently mentioned, of using the verbatim language of an opinion of the court in preparing an instruction. The requested instruction was not complete. It clearly implies that defendant was being assaulted and in imminent peril and that there had been no provocation on the part of defendant. The jury could well have taken this instruction to mean that defendant was justified, without question, in taking the life of Richards. It assumes all of the facts to be as claimed by defendant. It ignored the evidence tending to refute defendant's testimony. The request did not explain to the jury that it must first find all of the facts to be as defendant contended before the jury should consider whether or not the language used in the request applied to this case. The evidence in this particular case relating strictly to the killing of Richards presented a situation, as we have mentioned, in which the question was more nearly to find which of the two men was the aggressor. The jury could have found that after the killing of Deman, Richards had more reason to fear for his life than defendant did. The requested instruction did not fully cover the subject and the court was justified in refusing to give it. *State v. Nodine,* supra 198 Or 679, 686; *State v. Gray,* 1957, 212 Or 175, 318 P2d 570.

■ The fifth assignment claims error because the court refused to grant a new trial. One part of the motion for new trial, relied on here, alleges misconduct of the jury when it was deciding the case. Affidavits of some of the jurors were submitted with the motion. The affidavits contain averments of certain conduct within the jury room by members of the jury and of alleged statements by some members of the jury about extraneous matters. The allegations of miscon-

duct, if true, were not such as would have required a new trial. *State v. Imlah,* 1955, 204 Or 43, 281 P2d 973; *McDonald v. Pless,* 1915, 238 US 264, 269, 35 S Ct 783, 59 L Ed 1300. We cannot say that the trial court abused the judgment vested in him in passing upon a motion for new trial.

Defendant also demanded a new trial because of alleged improper remarks of the prosecutor during argument to the jury.

The court did not err in refusing to grant a new trial.

We have examined the record with care and have conducted extensive research much beyond what appears in this opinion upon the issues presented by defendant. We are satisfied that defendant received a fair trial and the judgment should be affirmed.