Argued and submitted September 15, 1980, affirmed October 12,
reconsideration denied November 19, 1981,
petition for review allowed January 5, 1982
See later issue Oregon Reports

## STATE OF OREGON,
*Respondent,*

*v.*

## ANTHONY ARNOLD CHARLES,
*Appellant.*

(No. 10-79-04725, CA 16674)

634 P2d 814

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Chief Judge, and Warden and Warren, Judges.

WARREN, J.

**WARREN, J.**

Defendant appeals from his conviction for murder after trial by jury. He assigns error to the trial court's: (1) denial of defendant's motion for mistrial; (2) failure to give defendant's requested jury instruction on self-defense; (3) admission of prior inconsistent statements offered by the state to impeach its own witness; and (4) admission of inflammatory poems found in defendant's possession and written in his handwriting. We affirm.

It is unnecessary to recite the detailed facts of this case, other than to note that the homicide occurred during a street fight on a mall in Eugene, and involved defendant and at least four other persons. At trial, the primary defense was self-defense.

As to the first assigned error, during the suppression hearing the state established possession by defendant of copies of certain poems focusing on street fighting exploits. The witness, a correctional officer at the Lane County jail, testified that when defendant was being transferred as a disciplinary measure because he had threatened to kill an officer, and his belongings were routinely turned over to her, she noticed the poems. Defense counsel did not object at that time to any of this testimony given out of the presence of the jury. At trial near the close of the state's case-in-chief, the same witness made essentially the same statement in response to the same question, as follows:

"Q. How did you come into possession of this property?

"A. [Defendant] was brought into the segregation area accompanied by officers from the area. He had threatened to kill an officer and he was being transported —

"[Defense Counsel]: Your Honor, I object, move for a mistrial. I think that's gone too far.

"THE COURT: Well, I'll strike that and instruct the jury to disregard it. The motion —

"[Defense Counsel]: Doesn't help, Your Honor.

"THE COURT: Motion for mistrial is denied. There's no reason to go beyond the necessary answer to the question."

Defendant relies on *State v. Jones,* 279 Or 55, 62, 566 P2d 867 (1977), for the proposition that, in *some* cases,

"the testimony which the jury is instructed to 'disregard' is so prejudicial that, as a practical matter, 'the bell once rung, cannot be unrung' by such an admonishment."

In *Jones,* the court stressed the persistent efforts by the prosecuting attorney to insinuate that the defendant had previously been convicted of rape, including a "clearly improper" attempt to get before the jury an alleged statement by a witness that the defendant "had done it so many times before." Here, there is no evidence whatsoever of prosecutorial misconduct.

■■ Citing *State v. Manrique,* 271 Or 201, 206, 531 P2d 239 (1975), defendant also suggests that the prejudicial statement was evidence of other crimes, but that is beside the point. Even if the record provided a basis, which it does not, to determine whether the threat, if actually made, would have constituted a crime, the state has not argued that the testimony could have been properly admitted. The trial court struck the testimony immediately and gave the jury a cautionary instruction. The testimony complained of was not directly responsive to the question asked by the prosecution. A motion for mistrial is addressed to the discretion of the trial court, and only a manifest abuse of that discretion will justify reversal. *State v. Middleton,* 46 Or App 381, 385, 611 P2d 698, *rev den* 289 Or 588 (1980). The trial court did not abuse its discretion here.

As to the second assigned error, defendant contends the trial court erred in not giving the following jury instruction on self-defense:[1]

"A person claiming the right of self-defense is not required to retreat or to consider whether he could safely retreat. If he is honestly and reasonably in fear of death or serious bodily harm he may stand his ground and use

---

[1] Decision in this case was held pending Supreme Court review of our decision in *State v. Shumway,* 44 Or App 657, 607 P2d 191 (1980). The court found, however, that the issue of self-defense was not raised by the evidence. *State v. Shumway,* 291 Or 153, 155, 630 P2d 796 (1981). Accordingly, the decision in *Shumway* does not affect the outcome of this case.

whatever force is reasonably necessary under the circumstances, even to the extent of taking the life of the attacker."

ORS 161.219 provides:

"Notwithstanding the provisions of ORS 161.209, a person is not justified in using deadly physical force upon another person unless he reasonably believes that the other person is:

"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

"(2) Committing or attempting to commit a burglary in a dwelling; or

"(3) Using or about to use unlawful deadly physical force against a person."

In support of the requested instruction, defendant cites *State v. Rader,* 94 Or 432, 458, 186 P 79 (1919), and *State v. Gray,* 43 Or 446, 74 P 927 (1904). As we noted in *State v. Burns,* 15 Or App 552, 561, 516 P2d 748 (1973), the legislative intention in enacting the self-defense statutes was to codify the common law of self-defense and not to create a new standard. Accordingly, reference to prior Oregon cases on the subject is appropriate in determining legislative intent. The law of justifiable homicide in Oregon is developed in *Goodall v. State,* 1 Or 333, 80 Am. Dec. 396 (1861); *State v. Smith,* 43 Or 109, 71 P 973 (1903); *State v. Gibson,* 43 Or 184, 73 P 333 (1903); *State v. Gray, supra;* and *State v. Rader, supra.*

In *State v. Gray, supra,* the Supreme Court held that it was error to refuse a requested instruction on self-defense. Nothing in the instructions given, or in the one erroneously refused, implied that the defendant there did or did not have a duty to retreat before exercising deadly force in self-defense. In language unnecessary to its decision the court stated:

"[In a case of a threatened battery without apparent deadly force] the assailed may withstand the attack and meet force with force, but not kill his assailant. The law does not require that he, being in a place where he has a

lawful right to be, and not being himself the aggressor, shall retreat to the wall, but it is his duty to retreat or otherwise avoid further conflict if he can reasonably do so without danger to his life or subjecting himself to great bodily harm, rather than take the life of his aggressor; that is to say, retreat or avoidance of further conflict to prevent the taking of human life is only required where the assault is not accompanied with imminent danger to life or great bodily injury, real or apparent. * * * " 43 Or at 454.

In *State v. Rader, supra,* the defendant killed the alleged victim in Rader's home. He relied on self-defense, and in instructing the jury the trial court said, in part:

" 'Before a person is justified under the law of self-defense in taking the life of another, it must appear, first, that the danger is actually or apparently imminent; and by imminent danger is meant an immediate danger, one that must be instantly met and which cannot be avoided by reasonable efforts to prevent it; and second, the danger must be such that the defendant believes and has good reason to believe that he is in danger of losing his life or of great bodily harm. * * * '" 94 Or at 442.

It refused, however, to give the following requested instruction:

" 'I instruct you that when a man is where he has a right to be, retreat is not necessary and he is not bound to retreat until his back is at the wall, as is the old saying, but he may stand his ground and repel the attack and meet force with force *if necessary,* even to the extent of taking the life of his adversary.' " (Emphasis added.) 94 Or at 443.

Relying on the authority of *State v. Gray, supra,* the court held that the requested instruction respecting the doctrine of retreat should have been given, but noted that "some of the requests to charge, not here quoted, leave out of view the element that the extreme of killing must be apparently necessary as a defense." 94 Or at 458.

Though the case is not cited to us, the instruction requested in this case was apparently taken from the language of *State v. Gibson, supra:*

" * * * [W]here the assault is precipitated without provocation, and is of such a character as to indicate to a reasonable mind acting upon appearances that the danger to life or the infliction of great bodily harm is imminent [retreat "to the wall" is not required as a condition to the right of self-defense]. In such case the assailed is justifiable in killing his aggressor if necessary to avert the consequences upon himself, and need not consider on the moment whether he may avert the impending danger or avoid the taking of the life of his antagonist by retreating, or resorting to some other expedient less violent." 43 Or at 193.

Finally, in *State v. Smith, supra,* the trial court refused to instruct the jury that "if 'there were such circumstances and surroundings that would lead an ordinary man to believe that he was in danger of being assaulted or of receiving great bodily harm from * * * the deceased, then I charge you,'" the defendant had a right to act in self-defense. In holding the requested instruction was properly refused, the Supreme Court stated:

"The right of self-defense rests upon the broad foundation of necessity (citations omitted) which is evidenced by a real or an apparent exhibition of force, to repel which, and to allay a reasonable apprehension of imminent danger, superinduced by some overt act, force may also be used (citation omitted), but without such necessity the right to resort thereto does not exist.

" * * * It will be observed that the word 'danger' is not qualified by the word 'imminent.' In *United States v. Outerbridge,* Fed. Cas. No. 15,978, Mr. Justice FIELD, in defining such limiting word, says: 'By "imminent danger" is meant immediate danger—one that must be instantly met, one that cannot be guarded against by calling on the assistance of others or the protection of the law.' If the defendant did not, as a reasonably prudent man, apprehend the existence of immediate danger from the apparently probable execution of said threats, the necessity adverted to did not exist, and therefore he was not justified in resorting to the use of force. These elements having been omitted, no error was committed in refusing to give the first instruction." 43 Or at 115-116.

■ From this review of the early Oregon cases, it is apparent that inherent in the common law concept of self-defense is the requirement that the use of force be necessary. *See also, State v. Porter,* 32 Or 135, 157, 49 P 964 (1897); and *State v. Nodine,* 198 Or 679, 714, 259 P2d 1056 (1953). It may be that one is not required to retreat or to consider that option when the apparent threat of death or great bodily harm is so near at hand as to render retreat or even its consideration likely to result in sufficient delay that the attacker "might execute his felonious purpose." *State v. Gibson, supra,* 43 Or at 193. But a threat of death or great bodily harm that is not imminent cannot justify the use of deadly force, because the use of such force may be unnecessary.[2]

■ A comparison of the instruction erroneously refused in *Rader* with the instruction requested here reveals that they are not equivalent. While defendant's requested instruction deals with the *degree* of force justifiable in self-defense, it fails to incorporate the concept, required by all the cases cited, that the *use of any force must be necessary* and, in fact, implies that it need not be. The requested

---

[2] The final draft of the proposed 1971 Criminal Code specifically dealt with the subject of retreat. It provided:

"Notwithstanding the provisions of [ORS 161.209], a person is not justified in using deadly physical force upon another person unless he reasonably believes that the other person is:

" * * * * *

"(3) Using or about to use unlawful deadly force; however, a person shall not use deadly physical force in the defense of himself if he knows that he can with complete safety avoid the necessity of using such force by retreating. A person is under no duty to retreat if he is:

"(a) In his dwelling and is not the original aggressor; or

"(b) A peace officer or a person assisting a peace officer at his direction, acting under [ORS 161.249]."

Proposed Oregon Criminal Code, § 23 (1970).

While this provision was not adopted, the commentary to the proposed code noted that:

"the result in a given situation would probably be no different under the proposed 'complete safety' test * * * than under the case law formulation which requires retreat 'only where the assault is not accompanied with imminent danger to life or great bodily injury' * * * .

Commentary, Proposed Oregon Criminal Code, § 23 (1970).

instruction, not being an accurate statement of the law in the terms requested, was properly refused.[3] *State v. Francis,* 284 Or 621, 626, 588 P2d 611 (1978).[4]

---

[3] We do not mean to imply that the failure to give a properly framed instruction concerning retreat would be reversible error, at least in the absence of some clear implication by the court in other instructions that a duty to retreat existed. *See State v. Joseph,* 230 Or 585, 589-591, 371 P2d 689 (1962); *State v. Barnes,* 150 Or 375, 380-384, 44 P2d 1071 (1935); *but see, State v. Rader,* 94 Or 432, 458, 186 P 79 (1919).

It appears that the subject of retreat is adequately and neutrally covered by a general instruction to the effect that the use of deadly force in self-defense is justified only when apparently *necessary* to prevent the imminent infliction of death or great bodily harm upon the assailed. *See State v. Gray,* 43 Or 446, 455, 74 P 927 (1904); *State v. Smith,* 43 Or 109, 116, 71 P 973 (1903). Since a general instruction on the subject of self-defense encompasses the "retreat" concept, the failure to give a specific instruction on "retreat" could not be prejudicial. *State v. Newlin,* 92 Or 589, 596, 182 P 133 (1919); *State v. Booth,* 284 Or 615, 619-620, 588 P2d 614 (1978). Whether deadly force is necessary or whether its use is unnecessary because it can be avoided by a safe retreat or other less drastic means would seem to be more properly a subject of jury argument.

[4] Nothing in the instructions given by the court implied a requirement of "retreat" as a condition to the use of force in self-defense. The instruction given by the court was requested by the defendant and was given in the language requested. It stated:

"Self-defense is a law of necessity. Every human being has a right to defend himself against death or serious bodily harm. But in order to justify the use of deadly force in defense, it must be apparent that the person attacked was so situated and endangered that he honestly believed and that he had reasonable grounds for believing that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against the attacker. The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person similarly situated the belief that the other person was then about to kill him or to do him serious bodily harm.

"In addition, the defendant must have actually believed he was in danger of death or serious bodily harm and that he could save himself from this threat only by the use of deadly force."

The language of this instruction was similar to that which the Supreme Court in *State v. Joseph, supra,* 230 Or at 589-591, and *State v. Barnes, supra,* 150 Or at 380-384, held did not imply a duty to retreat. *But see, State v. Shumway,* 291 Or 153, 155, 630 P2d 796 (1981). We conclude that the instruction here did not imply that defendant had a duty to retreat or escape prior to defending himself by the use of force, but if it did, and that was error, it was invited by the defendant. The trial court was not required to tell the jury in one breath, pursuant to defendant's requested instruction, that defendant could use deadly force in self-defense if he "actually believed" he could "save himself from this threat only by the use of deadly force" and in the next breath to tell the jury that defendant "is not required to retreat or to consider whether he could safely retreat." If defendant's requested instruction which was given implied a duty to retreat (we conclude it did not), the one requested by defendant but not given was inconsistent, contradictory and would only have served to confuse the jury. The defendant may not

■ The third assignment of error is the contention that in using prior inconsistent testimony before a grand jury to impeach its own witness, the state was in some way impermissibly attacking the character of the witness. The contention has no merit. ORS 45.590 permits a party calling a witness to impeach that witness' testimony by prior inconsistent statements, which is all the state did here.

■ ■ Finally, defendant argues that it was error to admit into evidence three poems in defendant's handwriting because their probative value was outweighed by their prejudicial effect. The state offered seven poems out of a total of nine, and the trial court rejected four of them for lack of relevancy. Of the remaining three, exhibits 93, 94 and 96, the trial judge explained at length his reasons for admitting them.[5] The weighing of probity versus prejudice in admission of evidence is within the sound discretion of

---

complain of the trial court's refusal to give a requested instruction which is inconsistent with another given at his request. *See State v. North,* 238 Or 90, 94, 390 P2d 637 (1964).

[5] "Exhibit 94, in my opinion, could be found by the jury to be relating [sic] directly to this incident. It mentions Willie 'D,' Joey Jive and Daryl 'T.' There is evidence from which the jury could find that the defendant has sometimes used the name Daryl. The jury could find that Willie 'D' refers to Willie Drafter, and Joey Jive refers to Joseph Pothier.

"The statement is made in the poem, 'All are in jail waiting to be tried for the life of a fool who fought and died. We will get out before too long because the punk who bought it was in the wrong. He was a fool who gambled against the Nation and lost. He made a mistake, his life was what it cost.'

"The jury could find that that refers to the incident on April 29th in the mall. It purports to be signed by Daryl 'T.' In my opinion there is nothing else that is prejudicial in that poem, and its relevance clearly outweighs its prejudicial effect. And as I've indicated, prejudice does not simply mean evidence that might be harmful to the defendant, it means evidence that might cause the jury to make a determination in the case on some basis other than the facts pertaining to the incident in question. But the poem does tend to identify the defendant with the crime which is in issue and, therefore, is relevant.

" \* \* \* \* \*

"Now, [Exhibit 93]. Now, here these words appear: 'Got in a fight with a fool who gambled and lost. He made a mistake, his life is what it cost.'

"The jury could find that this is a referral to the incident in question. The rest of the poem is in terms of — well, the rest of the poem consists of threats to an imaginary person. And that by itself, if it were not connected to the incident in question would be an irrelevant injection of prejudical matter in evidence. But I think on that one, the relevance outweighs the prejudice.

" \* \* \* \* \*

the trial court. *State v. Suttles,* 287 Or 15, 33, 597 P2d 786 (1979). The trial court did not abuse its discretion in admitting the poems.

Affirmed.

---

" * * * I will receive 94 and 96 together incidentally. I do believe that they probably go together. 96 does have a reference — well, in my mind they go together, and there are some other references to karate, for example, in 96. * * * "