Argued and submitted March 4, affirmed June 29, 1982

STATE OF OREGON,
*Respondent on review,*
*v.*
ANTHONY ARNOLD CHARLES,
*Petitioner on review.*

(CA No. 16674, SC No. 28238)

647 P2d 897

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Gary, Solicitor General, Salem, argued the cause for respondent on review. With him on the brief was James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General,** and Robert C. Cannon, Assistant Attorney General, Salem.

ROBERTS, J.

** Solicitor General at the time brief was filed.

## ROBERTS, J.

We allowed review in this case to consider a single issue: under Oregon law, does a defendant, confronted by an assailant using deadly physical force, having an opportunity to retreat in safety, have a duty to retreat, or may he stand his ground and use deadly physical force against the assailant?

The facts of this case arose out of a street fight in Eugene which involved defendant and four other individuals; it is not necessary to recite the details. What is significant is that a homicide occurred and defendant was convicted of murder. At trial defendant relied on the defense of self-defense. He requested the following instruction:

"A person claiming the right of self-defense is not required to retreat or to consider whether he could safely retreat. If he is honestly and reasonably in fear of death or serious bodily harm he may stand his ground and use whatever force is reasonably necessary under the circumstances, even to the extent of taking the life of the attacker."

The court refused to give the requested instruction; defendant claims that was error.

Defendant relies on *State v. Rader*, 94 Or 432, 443, 186 Pac 79, 83 (1919) in which it was held to be error not to give the following instruction.

"I instruct you that when a man is where he has a right to be, retreat is not necessary and he is not bound to retreat until his back is at the wall, as is the old saying, but he may stand his ground and repel the attack and meet force with force if necessary, even to the extent of taking the life of his adversary."[1]

---

[1] The court in *Rader, supra,* specifically relied on *State v. Gray,* 43 Or 446, 454, 74 P 927, 930 (1904) which held that the following instruction should have been given:

"It is not necessary that the assault made by the deceased at the time upon the defendant * * *, if you find that an assault was made, should have been made with a deadly weapon. An assault with the fist alone, if there was an apparent purpose and the ability to inflict death or serious bodily injury by the deceased upon the defendant * * *, is sufficient to justify the killing in self-defense, if the defendant * * *, at the time he shot and killed the deceased, had reason to believe and did believe that he was in imminent danger of death or great bodily harm at the hands of the deceased."

Defendant maintains that the language of *Rader* establishes that the law of Oregon is one of "no duty to retreat." There is, however, a long line of Oregon cases before and after *Rader* which can be read to hold that a defendant has a duty to retreat. Confusion is perhaps understandable.

The historical development of the question whether one is required to "retreat to the wall" or may stand his ground and defend himself contains many contradictions. One early twentieth century writer reports:

> " 'A true man, who is without fault, is not obliged to fly from an assailant who by violence or surprise maliciously seeks to take his life, or to do him enormous bodily harm.' These words of the Supreme Court of Ohio were quoted with approval and followed by the Supreme Court of the United States in 1895.[1] Two years later the same court sustained a charge to the effect that 'if he is attacked by another in such a way as to denote a purpose to take away his life, or to do him some great bodily harm. . . he may lawfully kill the assailant. . . provided he use all the means in his power otherwise to save his own life or prevent the intended harm, such as retreating as far as he can, or disabling him without killing him, if it be in his power.'[2] These contradictory views, thus held by the same court at substantially the same time, have pretty evenly divided the jurisdictions in this country. One view must be right; both cannot be."

"[1] *Beard v. U. S.,* 158 U. S. 550."

"[2] *Allen v. U. S.,* 164 U. S. 492."

Beale, *Retreat from a Murderous Assault,* 16 Harv L Rev 567 (1903).

The two views have developed concurrently; jurisdictions have simply adopted one rule or the other. According to W. LaFave & A. Scott, Criminal Law, § 53 at 395-96 (1972)[2] the majority of jurisdictions hold that a defender, who was not the original aggressor, need not retreat even if he can do so safely before using deadly force upon an assailant whom he reasonably believes will kill him

---

[2] *See also* Beale, *Retreat from a Murderous Assault,* 16 Harv L Rev 567 (1903); Beale, *Homicide in Self-Defense,* 3 Colum L Rev 526 (1903).

or do him serious bodily harm.[3] A strong minority holds a defender must retreat before using deadly force if he can do so in complete safety. In 1926 the American Law Institute took a position favoring the "retreat" rule, recognizing it as the minority view. Restatement (First) of Torts § 65(2) (1934); Perkins, *Self-Defense Re-examined,* 1 UCLA L Rev 133, 150 (1954).

Professor Perkins concludes that the concurrent development of the "retreat" or "no retreat" rules is the basis of the current split among jurisdictions. He, likewise, concludes that the prevailing view is a "no retreat" rule, and identifies Oregon as one of the "no retreat" jurisdictions. Perkins, *supra,* 1 UCLA L. Rev. at 145, n. 76, citing *State v. Rader, supra.* However, Oregon cases decided subsequent to *Rader* have not followed it: there appears to be only a single instance in which it has been cited.[4] On the other hand, no Oregon case has explicitly held that there is a duty to retreat, but cases before and after *Rader* hold consistently that self-defense is to be justified on the basis of necessity, that is, retreat is excused when the danger to the defendant is so absolute and imminent that there is no possibility of avoiding the conflict with safety.

The Oregon legislature has had the opportunity to consider adopting a general rule requiring retreat. The final draft of the proposed 1971 Criminal Code specifically dealt with this subject. It provided:

"Notwithstanding the provisions of [ORS 161.209], a person is not justified in using deadly physical force upon

---

[3] The question of whether one is required to retreat arises, in fact, only in a situation in which the alternative is to use deadly force to repel an attacker. There is no obligation on the part of an innocent person to retreat rather than use nondeadly force in his defense. *People v. Katz,* 263 App. Div. 883, 32 N.Y.S.2d 157 (1942); *State v. Gough,* 187 Iowa 363, 174 N.W. 279 (1919); and see Perkins, *Self-Defense Re-examined,* I UCLA L Rev 133, 136 (1954).

[4] In *State v. Shumway,* 44 Or App 657, 663, 607 P2d 191 (1980) *aff'd* 291 Or 153, 630 P2d 796 (1981), the Court of Appeals said:

"Defendant argues that retreat is not a necessary element of self-defense under Oregon law, at least when the killing occurs in the dwelling of the person claiming to have acted in self-defense. (*State v. Rader,* 94 Or 432, 186 P 79 (1919)), * * *."

The Court of Appeals, however, rejected reliance on *Rader.* It said the language in the instruction objected to by defendant was substantially similar to language approved by this court in *State v. Joseph,* 230 Or 585, 371 P2d 689 (1962) and *State v. Barnes,* 150 Or 375, 44 P2d 1071 (1935).

another person unless he reasonably believes that the other person is:

"* * * * *

"(3)   Using or about to use unlawful deadly force; however, a person shall not use deadly physical force in defense of himself if he knows that he can with complete safety avoid the necessity of using such force by retreating. A person is under no duty to retreat if he is:

"(a)   In his dwelling and is not the original aggressor; or

"(b)   A peace officer or a person assisting a peace officer at his direction, acting under [ORS 161.249]." Proposed Oregon Criminal Code, § 23 at 22 (1970).

The rule was rejected. The commentary to the proposed code noted that, under the case law as it had developed in Oregon, the statute was probably not necessary. Commentary, Proposed Oregon Criminal Code, § 23 at 23-25 (1970); Commentary, Oregon Criminal Code of 1971 § 23 at 22-24 (1975). Oregon case law, then controls the subject, and we turn now to a review of that case law.

In *State v. Porter,* 32 Or 135, 157, 49 P 964, 970 (1897) this court found no error in an instruction stating that the danger justifying self-defense "must be absolute, imminent, and unavoidable, or the defendant must, from all the circumstances, have honestly believed it to be so." *State v. Gibson,* 43 Or 184, 73 P 333 (1903) lays down guidelines for various self-defense situations. *See infra* note 3. Where the attack is without deadly force, "[t]he right of self-defense being founded upon necessity, the party who would invoke it must avoid the attack, if he can do so without danger or peril to himself." Where the defendant provoked the attack, he must withdraw and

"in good faith retreating to a place of apparent safety, and then, if his antagonist pursues him and renews the encounter by an attack such as to endanger life, he may protect his own life by killing his aggressor." 43 Or at 192, 73 P at 336.

Where the assault is without provocation, and

"a man, being upon his own premises, or in a place where he has a right to be, is assailed * * * by a person with a deadly weapon, and apparently seeking his life, he is not

obliged to retreat, or consider whether he could safely do so, but may stand his ground, and meet the attack in such a way and with such force as, under all the circumstances, he at the moment honestly believes and has reasonable ground to believe is necessary to save his own life or protect himself from great bodily harm." 43 Or at 193, 73 P at 336.

Soon after *Rader,* in *State v. Butler,* 96 Or 219, 242-43, 186 P 55, 60-61 (1920), *overruled on other grounds,* 260 Or 416, 490 P2d 491 (1971), the following instruction was found to be without error:

" 'The law regards human life as the most sacred of all interests committed to its protection, and there can be no setting up of self-defense, unless the necessity of taking human life is actual, present; urgent, unless, in a word, the taking of his adversary's life is the only reasonable resort of the party to save his own life or his person from deadly harm or severe calamity felonious in its character, or from all of the circumstances he had reasonable ground to believe his life or person was in such grave danger.' "

In *State v. Holbrook,* 98 Or 43, 71, 188 P 947, 956 (1920), *reh den* 98 Or 43, 192 P 640 (1920) *second reh den* 98 Or 43, 193 P 434 (1920), defendant objected to an instruction which stated:

"It must be danger so urgent that the killing is absolutely or apparently absolutely necessary, and the danger must not have been brought on by the slayer."

Defendant there argued that the use of the word "absolutely" required him to establish with mathematical certainty his claim of self-defense. Relying on *Porter, supra,* which upheld the use of the word "absolute", we said, "[t]he measure of proof required of [defendant] in such a case is not mathematical demonstration, but enough merely to raise a reasonable doubt of his guilt in the minds of the jurors." 98 Or at 72, 188 P at 956. The *Holbrook* instruction was upheld. *State v. Banks,* 147 Or 157, 32 P2d 571 (1934) also allowed the use of the word "absolutely", relying on *Porter, supra,* and *Holbrook, supra.* The challenged instruction in *Banks* stated:

"To justify homicide, the defendant may act upon an honest or well founded belief that it is necessary to take life to prevent death or great bodily harm to himself. The

danger must be so urgent that the killing is absolutely or apparently absolutely necessary." 147 Or at 170, 32 P2d at 576.

The relationship of "necessity" to "duty to retreat," outlined in the Court of Appeals opinion in this case,[5] was hinted at by this court in *State v. Barnes,* 150 Or 375, 382, 44 P2d 1071, 1079 (1935). The challenged jury instruction in that case stated:

"If you find from the evidence that the defendant killed the deceased under such condition as warranted and caused a reasonable belief on his part that he was in imminent peril of life or great bodily harm, *that he did not have a reasonable opportunity to escape and to avoid the affray,* and that he killed the deceased to preserve his own life or to protect himself from great bodily harm, under the reasonable belief on his part that it was necessary for this purpose, then the defendant killed [the deceased] in self-defense, and you should return a verdict of not guilty. * * *" (Emphasis added.)

The defendant challenged this instruction, saying that it improperly implied a duty to retreat if opportunity was available. The court said:

"This, the defendant contends, was equivalent to saying that it was defendant's duty to flee and that, if by fleeing, he could have avoided the necessity of taking the life of [the deceased], he would not be entitled to claim self defense. We do not place that construction upon the charge. Nor do we think the jury could have been in any way misled by the language objected to." 150 Or at 384, 44 P2d at 1075.

*Barnes,* however, rules out the notion that Oregon adheres to a "no retreat" rule, making it clear that there are some situations in which retreat will be required.

■    In *State v. Joseph,* 230 Or 585, 371 P2d 689 (1962) the issue again was whether the jury instruction given

---

[5]

"It appears that the subject of retreat is adequately and neutrally covered by a general instruction to the effect that the use of deadly force in self-defense is justified only when apparently *necessary* to prevent the imminent infliction of death or great bodily harm upon the assailed. *See State v. Gray,* 43 Or 446, 455, 74 P 927 (1904); *State v. Smith,* 43 Or 109, 116, 71 P 973 (1903). * * *" 54 Or App 272, 280 n. 3, 634 P2d 814, 818 n. 3.

implied a duty to retreat. The defendant objected to an instruction which said:

> "The circumstances must have been such as to warrant such a belief in the mind of a person of ordinary reason and firmness in the situation in which he was placed and it must have appeared to him that there was no other means of avoiding or declining the combat, if any you find." 230 Or at 589-90, 371 P2d at 691.

This court responded, using language similar to that in *Barnes:*

> "We do not agree with defendant that the part of the instruction quoted implies a duty to retreat and we do not think the jury would have so accepted it as applied to the evidence in this case." 230 Or at 590, 371 P2d at 691.

It appears, taking the instruction and the court's comment together, that the court found the jury could not have inferred a duty to retreat given the facts of the case.[6] The court noted that the language of the instruction was similar to that of instructions approved in *Porter, Holbrook* and *Butler,* all *supra.*[7]

According to two authorities, the rationale for the "no retreat" rule is based on a policy against making men act as cowards and experience the humiliation of ignominiouly running from a physical encounter.[8] This court expressly rejected that policy in *State v. Nodine,* 198 Or 679, 714, 259 P2d 1056, 1071 (1953), stating: "[a]ny civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of absolute necessity." This language from *Nodine* was cited in *State v. Joseph, supra.*

■ It is clear, therefore, that the standard for self-defense in Oregon has always embraced the concept of

---

[6] Defendant in *Joseph* claimed the victim was attacking him with a knife; the court, in approving the instruction, said "the jury could not have doubted its duty to acquit defendant if defendant's testimony was to be accepted at face value." 230 Or at 592, 371 P2d at 692.

[7] Because the exact wording of jury instructions is a matter left to the trial judge, this court's opinion cannot be read to approve or require certain instructions in any case; we can only say whether it was error to give, or refuse to give, specific instructions in a given case.

[8] *See* W. LaFave & A. Scott, Criminal Law, § 53 at 395; Perkins, *supra,* 1 UCLA L Rev at 160-61.

"retreat" as part of the larger concept of necessity, *i.e.,* the imminence and gravity of the threat posed to a defendant in a particular fact situation. This was noted by the Court of Appeals in its opinion, 54 Or App 272, 280 n. 3, 634 P2d 814, 818 n. 3. As a result, this court has never laid down an absolute rule endorsing either "retreat" or "no retreat" as the rule in Oregon, as noted previously in this opinion. The duty has depended upon the threat posed and the facts of each case.

Putting aside for a moment the question of whether the law of Oregon requires the defendant in this fact situation to retreat before using deadly force in his defense, we examine whether *State v. Rader,* in fact, stands for the clear "no retreat" rule which defendant suggests it does. Part of the instruction requested in *Rader* stated "I instruct you that *when a man is where he has a right to be,* retreat is not necessary * * *." 94 Or at 443, 186 P at 83. (Emphasis supplied.) The facts in *Rader* make that part of the instruction particularly significant. Defendant's father owned the premises where the homicide occurred. Defendant had served notice on the deceased to quit the property, and had attempted to collect money due from him. On the day of the homicide defendant went on the property and into the house. He asked deceased, "What are we going to do about this business"? and the latter answered, "I ain't going to do a damn thing about it," picked up a pan that was on the stove and slammed it on a bench. A struggle ensued. A third person came to the aid of defendant and was dragging him from the house when the deceased attacked defendant again. Defendant then shot and killed the deceased.

Although the *Rader* court did not analyze the case in terms dealing with a defendant's right to be where he is when the homicide occurs, it concluded

"[u]nder the authority of *State v. Gray,* (cite omitted ) [*supra* note 1,] the last of the requested instructions above quoted respecting the doctrine of retreat when a man is where he has a right to be, should have been given. Some of the requests to charge, not here quoted, leave out of view the element that the extreme of killing must be apparently necessary as a defense." 94 Or at 458, 186 P at 88.

This language from *Rader* makes two things clear: The continuing Oregon rule that self-defense is founded upon necessity, and that there is an exception to a duty to retreat situation when a defendant is where he or she has a right to be. The language relied upon from *Gray* is as follows:

"The law does not require that [a defendant] being in a place where he has a lawful right to be, and not being himself the aggressor, shall retreat to the wall, but it is his duty to retreat or otherwise avoid further conflict if he can reasonably do so without danger to his life or subjecting himself to great bodily harm * * *." 43 Or at 454-455, 73 P at 930.

It is well established that one is not required to retreat if he is in his "castle." *State v. Robinson,* 42 Del 419, 36 A 2d 27 (1944); *Watkins v. State,* 197 S 2d 312 (Fla 1967); *People v. McGrandy,* 9 Mich App 187, 156 NW 2d 48 (1967); *People v. Tomlins,* 213 NY 240, 107 NE 496 (1914); *Commonwealth v. Fraser,* 369 Pa 273, 85 A 2d 126 (1952); *State v. Preece,* 116 W Va 176, 179 SE 524 (1935). Rented or temporarily occupied rooms have been included in this concept of "castle," *Thomas v. State,* 255 Ala 632, 53 So 2d 340 (1951); *State v. Sorrentino,* 31 Wyo 129, 224 P 420 (1923), and in some instances also the grounds surrounding the premises. *Bowen v. State,* 217 Ala 574, 117 So 204 (1928); *Naugher v. State,* 105 Ala 26, 17 So 24 (1894); *but see Lee v. State,* 92 Ala 15, 9 So 407 (1891).

The "castle" concept has been enlarged to include a person's place of business or employment, *Foster v. Territory,* 6 Ariz 240, 56 P 738 (1899); *State v. Baratta,* 242 Iowa 1308, 49 NW 2d 866 (1951); *State v. Gordon,* 128 SC 422, 122 SE 501 (1924); *but see State v. Davis,* 214 SC 34, 37, 51 SE 2d 86, 87 (1948) finding self-defense justified if a person is "on property owned or lawfully occupied by him," but not on the specific facts of that case when the defendant, at the time of the homicide, was at his place of employment, an open field, for a purpose unrelated to his employment.

Except for the language in *Davis* relating to property ownership, we find no case similar to *Rader,* in which defendant's claim to being rightfully on the premises was that he was on business for his father, who owned the premises. The language in *Rader* respecting the doctrine of

retreat when a man is where he has a right to be, however, rather than standing for an all-encompassing "no retreat" rule, as defendant and Professor Perkins have suggested is the law in Oregon, simply provides that the victim of an attack is, in some instances not required to retreat when he is in his "castle" or a similarly legally recognized place. *See also State v. Gibson, supra.* Thus *Rader* is not the aberration suggested, but simply recognizes an exception to the general retreat-type "necessity" rule which, we now conclude, this court has consistently adopted by stating that the danger justifying self-defense be "absolute, imminent, and unavoidable" *(Porter),* that "the necessity of taking human life is actual, present, urgent" *(Butler),* that "the killing is absolutely or apparently absolutely necessary" *(Holbrook* and *Banks),* that there was no "reasonable opportunity to escape and to avoid the affray" *(Barnes)* and that "there was no other means of avoiding or declining the combat" *(Joseph).* Whether the *Rader* exception is still valid we need not decide under the facts of this case.

■     Having held that *Rader* does not present a general "no retreat" rule and that the Oregon cases require a defendant in a situation such as this to avoid the threatened danger where it is possible to do so without sacrificing his own safety, we hold it was not error for the trial court to refuse to give the instruction requested by defendant.

Affirmed.